**BOROUGH OF EDGEWORTH, Allegheny County, Pennsylvania, Appellant,**

v.

**Braden BLOSSER.**

**Braden BLOSSER, Appellant,**

v.

**EDGEWORTH BOROUGH CIVIL SERVICE COMMISSION.**

Commonwealth Court of Pennsylvania.

Argued Nov. 13, 1995.

Decided March 6, 1996.

Richard J. Antonelli, for Appellant.

Samuel J. Pasquarelli, for Appellee.

Before SMITH, J., FRIEDMAN, J. (P.), and SILVESTRI, Senior Judge.

SMITH, Judge.

These consolidated appeals are brought by the Borough of Edgeworth (Borough) and Braden Blosser from orders of the Court of Common Pleas of Allegheny County denying both their appeals from the decision of the Civil Service Commission of the Borough (Commission) in regard to Blosser's appeal from the action of the Borough Council in terminating his employment as a Borough police officer. The Commission concluded, following a hearing, that one but not both of the charges against Blosser had been sustained, and it modified the discipline imposed from a discharge to a suspension from the date of Blosser's original termination until the date of the decision, roughly six months.

The facts giving rise to the termination are largely undisputed. On the afternoon of Saturday, December 7, 1991, Blosser overheard a dispatcher ask a computer repair person about an adapter plugged into a wall near the dispatcher's desk with wires leading to and away from a device secured by velcro under the desk. None of the three of them could identify the device, but the repair person said it might be part of a recording device, and the dispatcher said that it resembled a hidden listening device he had seen some years earlier. Later that evening Blosser brought two police officers from Sewickley and Leetsdale to the station to examine the device; he also spoke with an employee of the local ambulance authority about it, who examined the device when he visited the police station.

Blosser also called Officer John Burlett at his home to ask if he knew what the device was, and Blosser informed Officer Frank Pickell when he arrived to go on duty at midnight that Blosser thought he had found a hidden microphone and asked Officer Pickell to examine it. Officer Pickell testified that Blosser told him that behind the radio was a device that could transmit to Police Chief James Creese's house anything that was going on in the station. In response to his observation that the device was very unsophisticated if it was a listening device, Blosser stated that the Chief "was too dumb to do anything other than the thing that was sticking on the wall." N.T., p. 65. The next day, Sunday, December 8, at approximately 9:00 p.m., Blosser telephoned the Borough Manager, Belynda Slaugenhaupt, at her home and told her he had discovered what appeared to be a bug in the police dispatch room, which he thought was planted by Chief Creese, and that if the device were connected to an FM transmitter, Chief Creese could carry this with him anywhere.

On Monday, December 9, in the first of several conversations with Blosser, the Manager asked him not to discuss the matter with other persons until the administration conducted its investigation. Blosser stated to the Manager that all of Quaker Valley knew about the matter. The Manager, after receiving advice from the Borough's solicitor and instruction from Mayor William M. Kelly to investigate the matter and to attempt to resolve it in-house, confronted Chief Creese with Blosser's accusations. The Manager and Chief Creese went to the dispatcher's area, where Chief Creese located the device and identified it as the recently installed rear door entry alarm. Meanwhile, despite the direction he received from the Manager, Blosser had Officer Burlett call him at home while Officer Burlett was on duty, and Blosser asked Officer Burlett to examine the device. When Officer Burlett asked the dispatcher on duty then about it, she immediately identified it as the rear door entry alarm and demonstrated its operation.

The Mayor, the Manager and Chief Creese met to discuss this incident; after reviewing the events and Blosser's disciplinary history, the Mayor decided to recommend to Council at its upcoming meeting that Blosser be discharged, and he so informed Blosser in a letter of December 12, 1991, which also suspended Blosser effective the same day.[1] Council voted to terminate Blosser at its meeting of December 17, 1991, and so informed him by letter dated the next day. Council's letter expressly incorporated the reasoning of the Mayor's previous letter, with a copy attached, and it enumerated previous items from Blosser's disciplinary record.[2] The letter concluded by stating that Blosser's disciplinary records, either individually or collectively, represented the reasons for his discharge and constituted neglect or violation of official duty and/or disobedience of orders and conduct unbecoming an officer within the meaning of the Borough Code.[3]

■ Blosser appealed to the Commission, which conducted a hearing presided over by a designated hearing officer. Following issuance of the Commission's written decision, both Blosser and the Borough appealed to the trial court. The trial court permitted additional discovery limited to the contentions raised by the Borough regarding the regularity of the Commission proceeding but took no additional evidence relating to the merits of the case. Where the trial court receives no additional evidence in a local civil service commission appeal, this Court's scope of review is to determine whether the findings of the local commission necessary to support its adjudication are supported by substantial evidence and whether it committed an error of law or violated constitutional

rights. *Jenkintown v. Civil Service Comm'n of Jenkintown,* 84 Pa.Cmwlth. 183, 478 A.2d 941 (1984).

As the Borough notes, this Court has held that under the Borough Code, a borough council has primary responsibility and discretion for determining whether and how a police officer should be disciplined, and both the trial court and the civil service commission should give due respect and weight to the actions of this duly constituted municipal body. Further, under Section 1191 of the Borough Code, 53 P.S. § 46191, a borough civil service commission has no authority to modify the penalties imposed by borough officials for violations of the Code where the commission finds that the charges against the officer are supported by the evidence and the penalties imposed are not otherwise prohibited. *Jenkintown,* 478 A.2d at 943.

The Borough first contends that the Commission erred in determining that the Borough failed to substantiate the charge that Blosser violated a rule or regulation of the department by contacting officers outside the Borough before following proper channels of authority within the Borough government. The Commission noted that Chief Creese, when asked whether it would be against any published personnel policy manual for an on-duty Edgeworth officer to ask an officer from another borough to look at a suspected listening device, testified that if an officer is investigating and has tried everything he can think of, it is the norm to call in another person.

■ This Court agrees with the Borough, however, that the Commission's reasoning misses the point by failing to take into ac-

---

1. The letter stated in part:
    Your actions in taking this matter to officials outside the Borough before following proper channels of authority within Borough government, of discussing the issue with people who had no need to know, of failure to properly verify the existence of the alleged listening device and to continue the allegations even after the matter was in proper hands for investigation, constitute poor judgment, conduct unbecoming a· professional officer and harmful embarrassment to the Borough.
    N.T., Borough Exhibit No. 5.

2. This letter listed other incidents resulting in written entries in Blosser's personnel file or oral

reprimands, namely: (1) his acting without authority to call out officers from other municipalities and circumventing an order by the chief of police of one of them by making contact with the mayor; (2) his using a racial slur in a district justice's office; (3) his lying to Chief Creese concerning whether he had answered a service call; and (4) his disregarding Chief Creese's repeated orders to file police reports in a timely fashion.

3. Act of February 1, 1966, P.L. (1965) 1656, *as amended,* 53 P.S. §§ 45101–48501.

count the applicable law and the facts established in this case. Among the specifically enumerated reasons set forth in Section 1190 of the Borough Code, 53 P.S. § 46190, as legal bases for removal are: "(2) Neglect or violation of any official duty" and "(4) Inefficiency, neglect, intemperance, immorality, *disobedience of orders,* or conduct unbecoming an officer." (Emphasis added.)

In July 1990, Blosser, while on a scheduled vacation, involved himself without Borough authorization in a drug raid in Sewickley by the Sewickley Police Department with the participation of Allegheny County narcotics agents. With authorization from no one, Blosser made contact with four neighboring municipalities' police departments requesting officers; when the chief in one of them declined, Blosser telephoned the Mayor of that borough to have the chief's decision overridden. The letter of reprimand that Blosser received from Chief Creese resulting from that incident stated: "Your actions of 'Officious Inter Meddlar' [sic] will not be tolerated now, or in the future.... Any future actions on your part, of this type of behavior, will be dealt with in the strictest measure of discipline." N.T., Borough Exhibit No. 4.

Although the evidence established that there is cooperation among the police forces in the area of the Borough, especially in emergency situations, Blosser was not confronted with a situation comparable to a hot pursuit or other emergency. Rather, before he had identified an item he deemed suspicious, he called in outside officers and an outside ambulance authority employee for assistance based on his own apparent lack of confidence in and respect for the administration of his own department. This Court agrees that this conduct was behavior similar to that for which he had received the written reprimand and was the equivalent of disobedience of orders.

In addition, the Borough contends that the record does not support the Commission's Finding of Fact No. 11, which states: "Blosser did not pursue his investigation after he contacted the Borough Manager on the advice of a fellow Police Officer and the Borough Manager told him not to discuss the matter any further with any other parties."

The Manager testified, "My instructions to Officer Blosser were, please do not discuss this with anyone further than he did already." N.T., p. 118. Blosser testified, "[The Manager] said, okay, don't say anything to anybody else after this." N.T., p. 200. Blosser freely admitted that he spoke to Officer Burlett after this conversation with the Manager and asked him to examine the device again, but he now argues that such contact did not violate the Manager's instruction because Officer Burlett was among the people with whom Blosser had spoken already. The Court concludes that the Commission's finding that Blosser did not further pursue his investigation lacks any support in the record. That conduct constituted disobedience of an order.

■ As the Borough notes, this Court has held that a violation of a specific written directive is not a prerequisite to a finding of neglect of official duty. In *Moore v. Borough of Ridley Park,* 135 Pa.Cmwlth. 555, 581 A.2d 711 (1990), the Court rejected an officer's contention that his unexcused failure to maintain radio contact could not constitute neglect of duty or inefficiency because no departmental code or regulation defined those terms. The Court, however, took judicial notice that the fundamental role of police in maintaining public safety and the corresponding duty to the employer is to remain available to respond. "To require a written directive on the most basic of job requirements would be inane." *Moore,* 581 A.2d at 713. That statement applies equally here.

Employers would not see the need in the ordinary course of business to publish a written directive stating that employees shall refrain from spreading accusations of criminal wrongdoing by superiors in the absence of any proof of such charges. Accordingly, the Court concludes that the Commission erred by concluding that the Borough failed to fully substantiate the charges against Blosser. Because this error provided the only basis for the Commission's assertion of authority to modify the discipline imposed by the Borough Council, the order of the trial court must be reversed. *Jenkintown.*

The foregoing discussion implicitly rejects the appeal of Blosser. Relying on the now-

discredited finding that Blosser ceased his investigation when the Manager told him to do so, the absence of a written rule, Chief Creese's response to a hypothetical question concerning investigative procedure in ordinary circumstances and the fact that one of the enumerated disciplinary history items concerning the timely filing of police reports had not been the subject of formal discipline, Blosser asserts that the Commission erred in concluding that he did anything meriting discipline at all. Blosser cites *Reichenbach v. Civil Service Commission of the Borough of Wilkinsburg*, 53 Pa.Cmwlth. 363, 417 A.2d 1292 (1980), to support his assertion.

In *Reichenbach* this Court held, in a case involving dismissal of a firefighter for absence from work, that a civil service commission should not have considered numerous excused prior absences that did not result in previous disciplinary action, and its doing so empowered the trial court in its discretion to reduce the penalty imposed by the Borough Council. Here, however, there is no question that the Borough Council's reference to Blosser's failure to comply with repeated orders to submit timely reports constituted only one item in an enumeration of incidents demonstrating a pattern of behavior of disobedience and conduct unbecoming an officer. Blosser's pattern of behavior was properly considered, and the Borough Council's action in response to Blosser's behavior was therefore lawfully within the Borough Council's discretion. The order of the trial court is reversed insofar as it upheld the Commission's decision to modify the discipline imposed by the Borough Council.

### ORDER

AND NOW, this 6th day of March, 1996, the order of the Court of Common Pleas of Allegheny County is reversed insofar as it affirmed the modification by the Civil Service Commission of the Borough of Edgeworth of the discipline imposed by the Borough Council in this case. The termination of Braden Blosser is hereby reinstated.