George JOHNSON

v.

**LANSDALE BOROUGH** and Lansdale
Borough Civil Service Commission,
Appellants.

Commonwealth Court of Pennsylvania.

Argued: June 18, 2014.

Decided Nov. 19, 2014.

808

Scott E. Blissman, Philadelphia, for appellants.

Blake E. Dunbar, Jr., Trappe, for appellee.

BEFORE: ·DAN PELLEGRINI, President Judge, and BERNARD L. McGINLEY, Judge, and RENÉE COHN JUBELIRER, Judge, and ROBERT SIMPSON, Judge, and MARY HANNAH LEAVITT, Judge, and PATRICIA A. McCULLOUGH, Judge, and ANNE E. COVEY, Judge.

OPINION BY Judge LEAVITT.

Lansdale Borough and the Lansdale Borough Civil Service Commission (collectively, Borough) appeal an order of the

Court of Common Pleas of Montgomery County (trial court) that modified the Commission's discipline of George Johnson, a Borough police officer. Specifically, the trial court reversed the Borough's termination of Johnson's employment and ordered that he be reinstated after a 30–day suspension. In doing so, the trial court held, *inter alia,* the Commission's factual finding that Johnson made a false statement to a district justice and to a district attorney was not supported by substantial evidence. The trial court also held that Johnson's conduct warranted a suspension, not a termination and, thus, modified the Commission's discipline. Concluding that the trial court did not err or abuse its discretion in modifying the Borough's discipline, we affirm.

**Factual and Procedural Background**

Johnson, a Borough police officer since 1997, did not appear at a preliminary hearing on May 18, 2010, before the district justice in a DUI case in which Johnson had been the arresting officer. Because Johnson was not scheduled to work the day of the hearing, the police department could not give the prosecutor information that might have allowed the district justice to reschedule the preliminary hearing. In the absence of evidence, the district justice dismissed the DUI charges against the defendant.

■ A criminal complaint dismissed at a preliminary hearing may be reinstituted so long as the statute of limitations has not run. *Commonwealth v. Thorpe,* 549 Pa. 343, 701 A.2d 488, 489 (1997). However, the decision to reinstitute charges must be made by the prosecutor. PA. R.CRIM.P. 544, *comment.*[1] When Johnson returned

1. It states:
 (A) When charges are dismissed or withdrawn at, or prior to, a preliminary hearing, or when a grand jury declines to indict and the complaint is dismissed, the attorney for the Commonwealth may reinstitute the

to work on May 19, 2010, he realized he had missed the preliminary hearing and began the process necessary to have the DUI charges reinstated.

On May 26, 2010, the Borough Chief of Police, Robert McDyre, called Johnson into his office to discuss his absence from the preliminary hearing. Sergeant Richard Bubnis and Sergeant Alex Kromdyk were also present for the interview, which lasted approximately 15 minutes. The interview was not recorded, and there is some disagreement about what was said there.

Johnson stated that he forgot about the preliminary hearing scheduled on a day when he was off work. Chief McDyre asked Johnson if he would try to reinstate the charges and whether reinstatement was even possible where the officer has forgotten. Johnson stated that he had seen the district justice and told him that he had been sick on the day of the hearing and, in addition, he had begun drafting a letter to the district attorney in an effort to get the charges reinstated. McDyre requested a copy of the draft letter, which

Johnson retrieved from his computer; it stated as follows:

> I did not attend the Preliminary Hearing because he [sic] was home sick. My department was unaware of this because I was on a scheduled day off and I did not notify them [sic] of my illness until I returned to work. [The district justice] was not notified by me of the situation until several days later and he had already dismissed the case.

R.R. 657a.

McDyre read the letter and stated that it was a lie, in view of Johnson's statement earlier in the meeting that he had forgotten about the hearing. Johnson replied that he was, in fact, sick and in bed for most of that day. Johnson stated that, in spite of his illness, he would have attended the hearing had he remembered it. Concluding that Johnson had been untruthful to the district justice and in his draft letter to the district attorney, McDyre placed Johnson on administrative leave.

On June 10, 2010, the Borough conducted a *Loudermill* hearing.[2] In attendance

---

charges by approving, in writing, the re-filing of a complaint with the issuing authority who dismissed or permitted the withdrawal of the charges.

(B) Following the re-filing of a complaint pursuant to paragraph (A), if the attorney for the Commonwealth determines that the preliminary hearing should be conducted by a different issuing authority, the attorney shall file a Rule 132 motion with the clerk of courts requesting that the president judge, or a judge designated by the president judge, assign a different issuing authority to conduct the preliminary hearing. The motion shall set forth the reasons for requesting a different issuing authority.

*Comment:* This rule provides the procedures for reinstituting criminal charges following their withdrawal or dismissal at, or prior to, the preliminary hearing as provided in Rule 543, or after the com-

plaint is dismissed when a grand jury declines to indict.

\* \* \*

The decision to reinstitute charges must be made by the attorney for the Commonwealth. Therefore, in cases in which no attorney for the Commonwealth was present at the preliminary hearing, the police officer may not re-file the complaint without the written authorization of the attorney for the Commonwealth. *See* Rule 507 (Approval of Police Complaints and Arrest Warrant Affidavits by Attorney for the Commonwealth—Local Option) for procedures for prior approval of complaints.

PA.R.CRIM.P. 544.

2. In *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), the U.S. Supreme Court held that because a public employee has a property interest in his position, he is entitled

were the Borough mayor, Sergeant Bubnis, Sergeant Kromdyk, as well as Johnson and his union representative, Officer Justin DiBonaventura. The purpose of the hearing, which lasted approximately five minutes, was to give Johnson an opportunity to explain why he should not be fired. Johnson stated that on May 17, 2010, he "called in sick" and did not work because of a sinus migraine headache. R.R. 267a. The next day, which was the day of the preliminary hearing on the DUI case, Johnson was not scheduled to work.[3] Johnson left home to do an errand in the morning, but began to feel ill. He returned home, took medicine and went to bed. Concluding that Johnson had lied about his reasons for not appearing at the hearing, Chief McDyre recommended that Johnson's employment be terminated.

On June 18, 2010, the Borough issued the following statement of charges to Johnson:

1. You failed to appear as required at a preliminary hearing at Lansdale District Court on Tuesday May 18, 2010, resulting in the dismissal of that case. You were properly subpoenaed by the Lansdale District Court to appear and testify at this criminal proceeding. You did not notify anyone of any inability on your part to appear for this hearing. Further, this is [the] fourth occurrence in which you have failed to appear at court when subpoenaed to do so. This act constitutes a violation of the Code of the Borough of Lansdale, Civil Service Commission, Chapter Seven, Section 7.A., Subsections (1)(b) and (d) [4] as well as Procedural Directive # 6, Code of Conduct, Section I, Subsections B(2) and (4).[5]

2. When you were questioned as part of an official investigation regarding the missed court hearing, you were ordered to answer honestly and completely. During the interview it was revealed

R.R. 614a.

5. Lansdale Borough Police Department Procedural Directive # 6, Code of Conduct, Section I, Subsections B(2) and (4) provide:

> B. Police Officers employed in the Police Department of the Borough shall not be suspended, removed or reduced in rank except for the following reasons:
>
> * * *
>
> 2. Neglect or violation of any official duty.
>
> * * *
>
> 4. Inefficiency, neglect, intemperance, disobedience of orders, or conduct unbecoming an officer.

R.R. 612a.

to a pre-termination hearing that satisfies the requirements of due process.

3. A "squad day" is personnel time that accumulates over the course of working numerous 12-hour shifts. Although an officer is not required to work on a squad day, it does not relieve him of the obligation to attend a court hearing.

4. The Code of the Borough of Lansdale Section 7.A., Subsections (1)(b) and (d) provide:
 A. Grounds for disciplinary action.
 1. No person appointed to a position in the Police Department pursuant to these rules and regulations may be suspended without pay or removed and no person promoted in rank pursuant to these rules and regulations may be reduced in rank except for the following reasons:
 * * *
 (b) Neglect or violation of any official duty;
 * * *
 (d) Inefficiency, neglect, intemperance, disobedience of orders or conduct unbecoming an officer[.]

that you were untruthful as to the reason you failed to attend the hearing. This act constitutes a violation of the Code of the Borough of Lansdale, Chapter Seven, Section 7.A., Subsections (1)(b) and (d) and Procedural Directive # 6, Code of Conduct, Section I, Subsection B(4).

3. You made false statements to the Court as to the reason you had missed the court proceeding. This act constitutes a violation of the Code of the Borough of Lansdale, Chapter Seven, Section 7.A., Subsections (1)(b) and (d) and Procedural Directive # 6, Code of Conduct, Section I, Subsection B(4).

4. You prepared a document to the District Attorney's office in which you falsely stated the reason you had missed a preliminary hearing and you requested "re-arrest" permission based on the false statement. This act constitutes a violation of the Code of the Borough of Lansdale, Chapter Seven, Section 7.A., Subsections (1)(b) and (d) and Procedural Directive # 6, Code of Conduct, Section I, Subsection B(4).

R.R. 635a–36a. On June 23, 2010, the Borough Council voted to terminate Johnson's employment. Johnson appealed this determination to the Commission, which conducted hearings over the course of four days.

Chief McDyre testified that, based upon his interview of Johnson at the May 26, 2010, meeting and Johnson's statements at the *Loudermill* hearing, he believed Johnson should be discharged.

Sergeant Bubnis, who was Johnson's supervisor, testified that when he learned that Johnson had failed to appear at the May 18, 2010, preliminary hearing, he reported that fact to Chief McDyre, who called the meeting on May 26, 2010. Bubnis testified that at this meeting, Johnson apologized for missing the preliminary hearing, which he had forgotten. Johnson further stated that he had apologized to the district justice, explaining that he had been sick that day. Bubnis stated that when Johnson was challenged by Chief McDyre about changing the explanation from forgetfulness to illness, Johnson stated that "one of the reasons he forg[o]t was because he was sick." R.R. 203a. Sergeant Alex Kromdyk also testified that Johnson stated at the May 26, 2010, meeting that he forgot about the hearing.

Johnson testified on his own behalf. He explained that on May 13, 2010, his seven-year-old son was attacked by his neighbor's pit bull and suffered significant injuries to his right thigh and left arm. On May 14th and 15th he worked his scheduled shifts. On May 16th he was not scheduled to work. On Monday, May 17th he awoke with a migraine headache, called in sick, took medicine and slept most of the day. Johnson testified that he has a long history of sinus problems, which often cause migraine headaches. Johnson's sinus problems have also caused bronchitis and pneumonia in the past.

Johnson testified that on May 18, 2010, the day of the preliminary hearing, he "woke up sore from the migraine headache." R.R. 269a. He went to the municipal building to vote in the primary and to follow up on the police report that he had filed about his son's dog bite. By noon, feeling worse, he went home, took medication prescribed for his sinus infection and went to bed. He did not realize that he had missed the preliminary hearing until he went to work the next day. He told Sergeant Bubnis that he missed the hearing because he had been sick and also that he had been "very upset by the issue of what happened to [his] son with [the] dog." R.R. 272a.

As to the May 26, 2010, meeting, Johnson's recollection was that he told McDyre

that he forgot the preliminary hearing for two reasons, *i.e.*, his son's injury and his illness. Johnson recalled McDyre's insistence that Johnson had not been sick at all but had just forgotten about the hearing. When McDyre threatened to fire Johnson if he lied again, Johnson reiterated that he had not lied. Rather, he explained that his illness combined with his apprehension over his son's injury caused him to forget about the hearing.

Johnson also testified that, at the *Loudermill* hearing, he specifically asked McDyre why he believed Johnson had made false statements. McDyre replied that Johnson had changed his story for missing the hearing from forgetfulness to his son's injury and illness. Johnson responded that he had not lied; rather, he stated that he had forgotten about the hearing because his illness and his son's condition were foremost in his mind. Johnson confirmed that had he remembered the preliminary hearing, he would have appeared in spite of his illness.

Officer DiBonaventura, who has worked as a police officer for the Borough for 21 years, including 12 as a detective, testified on Johnson's behalf. DiBonaventura opined that McDyre's May 26, 2010, interview was procedurally flawed because there were no notes taken during the interview. Once McDyre believed Johnson to have lied, he should have written down the specific questions he had asked and Johnson's precise responses. Johnson should have then been allowed to read and sign the synopsis of the meeting, which would have resolved the discrepancies about what was said by whom that day. DiBonaventura further opined that a stenographic or audio recording of such an interview should be made where an officer's career is at stake.

DiBonaventura testified that he was present at Johnson's *Loudermill* hearing

as a union representative and took notes. His notes indicated a disagreement between McDyre and Johnson about Johnson's statements at the May 26th meeting. Johnson stated that he had provided two reasons for missing the preliminary hearing. McDyre believed that Johnson had changed his story.

Next to testify for Johnson was Lawrence Miller, D.O., his family physician. Dr. Miller confirmed that Johnson has a long history of chronic sinusitis, including several bouts with pneumonia. Dr. Miller testified that at the end of March he prescribed Levaquin to address Johnson's sinus problems. When Dr. Miller saw Johnson on May 24, 2010, his congestion and cough were such that he ordered a computerized axial tomography scan of Johnson's sinuses. Dr. Miller opined that Johnson was sick on May 17 and May 18, 2010, because he was still sick on May 24, 2010.

Finally, Johnson offered the testimony of Detective Sergeant Joseph Bennis of the Montgomery Township Police Department. Bennis, who has known Johnson for several years, testified that on May 18, 2010, at approximately 11:00 a.m., he encountered Johnson and his wife in the municipal building. Johnson declined to shake Bennis' hand, stating that he was not feeling well and did not want to pass along any germs.

The Commission made findings on each of the Borough's four charges against Johnson. It sustained three of the charges and upheld Johnson's dismissal.

On Charge 1, failure to appear at the preliminary hearing, the Commission found that, by his own admission, Johnson did not attend the hearing and did not notify the district justice, assistant district attorney or the police that he would not attend. Accordingly, the Commission sustained Charge 1.

On Charge 2, failure to answer questions fully and honestly, the Commission held that the Borough did not

> provide substantial competent evidence sufficient to convince the Commission that Officer Johnson's dissembling as to the reason for the missed hearing *constituted deliberate lies* during the May 26th meeting.

R.R. 763a (emphasis added). The Commission explained that

> the Borough did not convincingly demonstrate that during this meeting Officer Johnson's admitted provision of multiple and contradictory explanations as to the missed May 18th hearing were 'lies' or that Officer Johnson did not 'fully respond to the questions' he was asked.

R.R. 764a. The Commission agreed with Officer DiBonaventura's criticisms of the May 26th meeting because Chief McDyre did not follow accepted investigatory procedures. McDyre should have made a contemporaneous record of the precise questions put to Johnson and his precise responses. For these reasons, the Commission granted Johnson's appeal with respect to Charge 2.

On Charge 3, making a false statement to the district justice, the Commission upheld the charge. Johnson testified at the Commission hearing that he forgot to attend the hearing for two reasons, *i.e.*, his illness and his son's dog bite. Johnson also testified that he gave one reason to the district justice, *i.e.*, that he "had been sick that day" because he wanted "to keep the other stuff personal." R.R. 361a. Because Johnson did not provide a full explanation to the district justice, the Commission found that Johnson made a false statement, as charged.

On Charge 4, drafting a false document to the district attorney, the Commission found that Johnson's draft letter omitted the undisputed fact that he had forgotten about the preliminary hearing. The Commission equated this omission with making a false statement and, accordingly, denied Johnson's appeal of Charge 4. That the draft letter was not actually sent to the district justice was not discussed by the Commission.

In sum, the Commission held that the Borough met its burden of proof on Charges 1, 3 and 4 but not on Charge 2. In these circumstances, the Commission concluded that termination of Johnson's employment was an appropriate penalty.

Johnson appealed to the trial court, which did not take additional evidence. It did allow oral argument.

The trial court reviewed the Commission's holdings. On Charge 2, the Commission held that the Borough did not prove that Johnson had lied when he offered two successive reasons for not attending the scheduled hearing, *i.e.*, that he forgot and forgot because he was sick and "shaken up" by his son's dog bite injury. On Charges 3 and 4, the Commission found that Johnson made "false statements" about his reason for missing the hearing when he attributed the absence to sickness. The trial court held the Commission's holdings on Charges 2, 3 and 4 could not be reconciled. First, there was no evidence that Johnson was *not* sick on May 18, 2010, and the Commission did not so find. Second, because the Commission found that the Borough did not prove that any of Johnson's stated reasons for missing the hearing were untruthful, it was inconsistent for the Commission then to conclude that Johnson's statement that he was sick was a false statement. The trial court dismissed Charges 3 and 4 as not proven and modified Johnson's discipline to a 30–day suspension.

### Appeal

The Borough has appealed to this Court, contending that the trial court erred. The

Borough argues that the Commission's findings of fact were binding on appeal and that the trial court could only reject them if they were not supported by substantial evidence. It contends that the trial court substituted its own findings for the Commission's under the guise of conducting a substantial evidence analysis, and this was error. The Borough also argues that the trial court erred in modifying Johnson's termination to a 30–day suspension.

The case was listed for oral argument before this Court sitting *en banc* and the parties were instructed to address the following questions at oral argument:

1. What is a reviewing court's proper scope of review of a borough civil service commission decision where no additional evidence has been taken?

2. Whether Section 1191(c) of the Borough Code confers authority upon a trial court to modify the discipline imposed upon any borough employee by the borough's civil service commission where the trial court (i) does not take additional evidence or (ii) does not set aside the commission's findings of fact or conclusions of law?

3. Whether the trial court erred in reversing the Borough Civil Service Commission's holding that the borough police officer made a false statement to the local district justice and the district attorney when he stated that he missed the preliminary hearing because of sick-

---

**6.** Over 13 years, the employee had accumulated 648 absences, and all but 18 were for medical reasons.

**7.** Act of February 1, 1966, P.L. (1965) 1656, *formerly* 53 P.S. § 46191(c). Section 1191(c) was recently repealed by the Act of April 18, 2014, P.L. 432, which amended Title 8 of the Pennsylvania Consolidated Statutes to consolidate multiple sections of The Borough Code. Former Section 1191(c) is now codified at 8 Pa.C.S. § 1191(c). The language is essentially identical:

---

ness and holding, instead, that the statement was incomplete not false?

Commonwealth Court *per curiam* order of May 5, 2014. The case was argued on June 18, 2014, and the parties addressed the questions as instructed.

### Trial Court's Scope of Authority

We begin with a review of a trial court's scope of authority over a borough civil service commission decision. In *Reichenbach v. Civil Service Commission of the Borough of Wilkinsburg*, 53 Pa.Cmwlth. 363, 417 A.2d 1292 (1980), a fireman was terminated for excessive absenteeism,[6] and the borough civil service commission affirmed. On appeal, the trial court modified the penalty to a suspension because it concluded that the evidence before the commission did not prove that the absences were fraudulent. This Court affirmed the trial court, explaining that where

the lower court has modified a penalty, [our] proper scope of review is ... "whether the findings are supported by the evidence or whether the [trial] court was guilty of an abuse of discretion or an error of law."

*Id.* at 1293 n. 1 (quoting *Eppolito v. Bristol Borough*, 19 Pa.Cmwlth. 99, 339 A.2d 653, 655 (1975)).

We emphasized under the applicable statutory provision, Section 1191(c) of The Borough Code,[7] the trial court has the

---

All parties shall have an immediate right of appeal to the court of common pleas of the county, and the case shall there be determined as the court deems proper. No order of suspension made by the commission may be for a longer period than one year. The appeal shall be taken within 30 days from the date of entry by the commission of its final order and shall be by petition. Upon the appeal being taken and docketed, the court of common pleas shall schedule a day for a hearing and shall proceed to hear

discretion to modify a penalty imposed by a borough civil service commission. Former Section 1191, which has been made part of the consolidated Borough Code, stated as follows:

All parties concerned shall have immediate right of appeal to the court of common pleas of the county, and the case shall there be determined *as the court deems proper.* No order of suspension made by the commission shall be for a longer period than one year. The appeal shall be taken within thirty days from the date of entry by the commission of its final order and shall be by petition. Upon the appeal being taken and docketed, the court of common pleas shall fix a day for a hearing and shall proceed to hear the appeal on the original record and additional proof or testimony as the parties concerned may desire to offer in evidence. The decision of the court affirming or revising the decision of the commission shall be final, and the employe shall be suspended, discharged, reduced in rank or reinstated in accordance with the order of court.

53 P.S. § 46191(c), repealed and restated at 8 Pa.C.S. § 1191(c) (emphasis added). In analyzing this statutory language, we explained that the trial court's

scope of review is broad, allowing [it] to revise a decision by the [civil service] [c]ommission as long as it does not abuse its discretion in doing so.

*Reichenbach,* 417 A.2d at 1294. Because the trial court was permitted to modify the penalty "as it deems proper," we affirmed its order.

The Pennsylvania Supreme Court has also considered the meaning of the phrase "as the court deems proper" in a different statute and held that it gives a trial court broad authority to revisit the discipline imposed by a township civil service commission. In *Lower Merion Township v. Turkelson,* 396 Pa. 374, 152 A.2d 724 (1959), a township police officer's employment was terminated because he could not account for $50 he had received, in his official capacity, from a local school. On appeal, the trial court agreed with the civil service commission's determination that the police officer had committed misconduct but concluded that a termination of employment was too severe. The trial court modified the discipline to a three-month suspension without pay, noting that the superintendent of police had permitted officers to receive Christmas gifts.

The Supreme Court affirmed. In doing so, the Supreme Court construed the language of Section 645 of The First Class Township Code,[8] which states that a township officer, who has been removed, suspended or reduced in rank by the commission,

shall have immediate right of appeal to the court of common pleas of the county and the case shall there be determined *as the court deems proper.*

53 P.S. § 55645 (emphasis added). The Supreme Court explained that the language "as the court deems proper" gave "the [trial court] full discretion to affirm, reverse or modify the action of the [commission]." *Turkelson,* 152 A.2d at 726.

Likewise, in *Appeal of Redo,* 42 Pa. Cmwlth. 468, 401 A.2d 394 (1979), the trial

---

the appeal on the original record and additional proof or testimony as the parties concerned may desire to offer in evidence. The decision of the court affirming or revising the decision of the commission shall be final, and the employee shall be suspended, discharged, reduced in rank or reinstated in accordance with the order of court.
8 Pa.C.S. § 1191(c).

8. Act of June 24, 1931, P.L. 1206, added by the Act of May 27, 1949, P.L.1955, *as amended,* 53 P.S. § 55645.

court modified the dismissal of a police officer to a one-year suspension. On appeal, this Court found that the language "as the court deems proper" in former Section 1191(c) of The Borough Code vested the trial court with discretion "to make its own order concerning the suspension, discharge, demotion or reinstatement of the officer." *Redo,* 401 A.2d at 398. We construed former Section 1191 of The Borough Code to empower

> a [trial court] to modify a penalty imposed by a borough civil service commission as long as the [trial] court itself does not thereby commit an abuse of discretion.

*Id.* (quoting *Appeal of Fuller,* 25 Pa. Cmwlth. 116, 358 A.2d 756, 757, 758 (1976)). Relying on *Turkelson,* we explained that the phrase "as the court deems proper" gives the trial court broad discretion to revisit a local civil service commission's determination.[9]

 In sum, a trial court has broad discretion to modify a police officer's discipline in any appeal of a civil service commission decision. Only where the trial court abuses its discretion in modifying the penalty may its decision be set aside. An abuse of discretion is not merely an error of judgment. Rather,

> discretion is abused when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence or the record.

*Commonwealth v. Flor,* 606 Pa. 384, 998 A.2d 606, 620 (2010) (quoting *Commonwealth v. Randolph,* 582 Pa. 576, 873 A.2d 1277, 1281 (2005)) (citations and internal quotation marks omitted).

---

9. While *Turkelson* involved The First Class Township Code, we explained that the operative language, "as the court deems proper,"

### *De Novo* Review

 As a general matter, this court has considered the meaning of *de novo* review and explained as follows:

> The difference between *de novo* review and appellate review is significant. Under *de novo* review, the reviewing tribunal conducts an independent fact-finding proceeding in which new evidence is taken and all issues are determined anew. Under appellate review, the reviewing tribunal examines the record to determine whether the agency's findings are reasonably supported by substantial evidence.

*Medical Shoppe, Ltd. v. Wayne Memorial Hospital,* 866 A.2d 455, 464 (Pa.Cmwlth. 2005) (quoting *Manor v. Department of Public Welfare,* 796 A.2d 1020, 1029 n. 12 (Pa.Cmwlth.2002)). The "independent fact-finding proceeding" that takes place in a *de novo* review may not require additional evidence. Pointedly,

> [t]he *sine qua non* of *de novo* review is not that the person or body conducting the review hear testimony anew; rather it is that such person or body possess and exercise the authority to arrive at an independent judgment on the matter in dispute.

*Id.* (quoting *Codorus Stone & Supply Co. Inc. v. Kingston,* 711 A.2d 563, 566 (Pa. Cmwlth.1998)).

In *In re Appeal of Blystone,* 144 Pa. Cmwlth. 27, 600 A.2d 672 (1991), this Court held that the trial court's review of the decision of a borough civil service commission is *de novo.* In *Blystone,* a borough civil service commission upheld the borough's decision to reduce the rank of the chief of police. The trial court held that it was bound by the commission's

was identical and, thus, the Supreme Court's analysis in that case was dispositive.

determination unless it was arbitrary and capricious. We reversed, holding that the court's review of a borough civil service commission is "a more expansive and *de novo* review." *Id.* at 673 n. 2 (emphasis added). *See also Gaffney v. City of Philadelphia*, 728 A.2d 1049, 1051 n. 2 (Pa. Cwmlth.1999) (citing *Blystone* and "distinguishing the limited scope of review under 7.7–201 from the more expansive *de novo* review available under [former] Section 1191 of [T]he Borough Code").[10]

### Borough Appeal of Johnson's Reinstatement

■ The question before this Court is whether the trial court erred or abused its discretion in reversing the conclusions of the Commission and, then, modifying the discipline imposed. We conclude that the trial court stayed well within the bounds of its statutory authority and that its rejection of the Commission's conclusion on Charges 3 and 4 was appropriate in a *de novo* review.

The Commission held that Johnson made a false statement when he informed the district justice that he missed the preliminary hearing because of illness and when he repeated that excuse in a draft letter to the district attorney that was never sent. The trial court rejected the Commission's holding for two reasons.

First, it was undisputed that Johnson had been sick on the day of the preliminary hearing. The trial court noted that the Commission

did not make any findings of fact that Johnson was not sick on the day in question. Even during oral argument [the Borough] conceded that Johnson was at home, sick on the afternoon on which the preliminary hearing was scheduled.

Trial court op. at 3.[11] It is true that Johnson stated that notwithstanding his illness, he would have attended the hearing had he remembered it. Johnson also explained that he did not remember the hearing because of his illness and his child's injury. The trial court held that Johnson's statements that he missed the hearing for illness may have been incomplete, but they were not false because he was sick on the day of the hearing.

Second, the trial court reasoned that Charges 3 and 4 did not cite Johnson for providing *incomplete* reasons for his absence. Rather, they charged him with making a "false statement." *Id.* at 5. The evidence did not prove a falsehood because it did not prove that Johnson was well on May 18, 2010. *Id.* at 5. The evidence presented by the Borough proved, at worst, that Johnson made an incomplete statement. The trial court concluded that

---

**10.** The dissent cites a number of cases on the scope and standard of appellate review, but in those cases the scope of the trial court's authority under former Section 1191 of the Borough Code was not a contested issue. *Appeal of Zimmett*, 28 Pa.Cmwlth. 103, 367 A.2d 382 (1977), and *Borough of Jenkintown v. Civil Service Commission of Jenkintown*, 84 Pa. Cmwlth. 183, 478 A.2d 941 (1984), also cited by the dissent, are inapposite. They addressed the question of whether a borough civil service commission has the authority to modify discipline imposed by the borough, not whether the trial court has authority to modify discipline imposed by a commission.

Here, the trial court held that the record did not contain substantial evidence to support the Commission's finding that Johnson had made false statements because it was uncontroverted that Johnson was sick on the day of the preliminary hearing. The trial court's analysis falls within the scope of appellate review.

**11.** This was also conceded by counsel for the Borough at *en banc* argument before this Court.

the Borough's evidence did not support Charges 3 and 4, but only Charge 1, since there was no question Johnson did not attend the preliminary hearing.

At the hearing before the Commission, Chief McDyre testified that he recommended termination because he believed Johnson was untruthful; he would not have recommended termination solely for Johnson missing the preliminary hearing before the district justice. Consistent with that testimony, the trial court modified Johnson's termination to a suspension because the only charge proven was that Johnson missed the hearing. The trial court's modification was consistent with its conclusions of law, had a specific foundation in the record and did not manifest an abuse of discretion.

## Conclusion

For these reasons, we affirm the order of the trial court.

### ORDER

AND NOW, this 19th day of November, 2014, the order of the Court of Common Pleas of Montgomery County, dated January 3, 2013, in the above-captioned matter is hereby AFFIRMED.

### DISSENTING OPINION BY Judge COVEY.

I respectfully dissent from the Majority's decision affirming the trial court's modification of the Lansdale Borough Civil Service Commission's (Commission) termination of George Johnson's (Johnson) employment. The Majority's ruling is based upon its recognition that the scope of the trial court's review of a borough civil service commission's determination is "as [the trial court] deems proper," which "gives a trial court broad authority to revisit **the discipline** imposed by a township civil ser-

vice commission." Majority Op. at 815 (emphasis added). I agree that the discipline can be revisited **so long as** the trial court, which does **not take** any new evidence, does not ignore the Commission's findings of fact that are based on substantial evidence. However, in the instant action, the trial court did not just revisit the penalty. Instead, without taking any additional evidence, the trial court disregarded the Commission's factual findings as to whether the underlying conduct occurred, concluded that the Commission had improperly sustained two of the charges and then, based upon its conclusion that only one charge had been proven, modified the Commission's penalty. The trial court's decision is contrary to a wealth of case law, and thus, I would reverse its decision.

Recently, in *Keslosky v. Old Forge [Borough ] Civil Service Commission*, 73 A.3d 665 (Pa.Cmwlth.2013), *allocator den.*, —— Pa. ——, 89 A.3d 1286 (2014), this Court affirmed the trial court's decision to uphold a borough police officer's suspension. The Court restated the well-established rule:

**This Court's review of the actions of a municipal civil service commission is limited.** Where a full and complete record is made of the proceedings before a municipal civil service commission, **a reviewing court must affirm the adjudication unless it violates constitutional rights, is not in accordance with the law, or the findings of fact are not supported by substantial evidence.** Section 754(b) of the Local Agency Law, 2 Pa.C.S. § 754(b); *McAndrew v. Municipal Civil [Serv. Comm'n ] of Scranton*, 952 A.2d 1219, 1222 n. 7 (Pa. Cmwlth.2008). When a lower court admits additional testimony in an appeal from a civil service commission adjudication, our review is to determine whether the trial court abused its discretion or

committed an error of law. *Gresock v. City of Pittsburgh Civil [Serv. Comm'n]*, 698 A.2d 163, 165 n. 1 (Pa. Cmwlth.1997). An abuse of discretion occurs when findings are not supported by substantial evidence in the record. *Coal Gas Recovery, L.P. v. Franklin [Twp.] Zoning Hearing [Bd.]*, 944 A.2d 832, 838 n. 9 (Pa.Cmwlth.2008).

*Keslosky*, 73 A.3d at 670 n. 5 (emphasis added). Notably, in the instant action, the trial court took no new evidence.

In *Borough of East McKeesport v. Special/Temporary Civil Service Commission of the Borough of East McKeesport*, 942 A.2d 274, 277–78 n. 3 (Pa.Cmwlth.2008), this Court stated:

> This Court's scope of review of an adjudication of a municipal civil service commission is limited. This Court must affirm the adjudication where a full and complete record is made unless it violates constitutional rights, is not in accordance with the law, it violates the procedural provisions of the local agency law, or the commission's findings are not supported by substantial evidence. Although the Court may examine the evidence, it may not substitute its judgment for that of the commission. Indeed, the Court may not reweigh the evidence since the commission, as fact finding tribunal, is in a better position to discover the facts based upon the testimony and the demeanor of witnesses.

(Citations and quotation marks omitted).

In *Day v. Civil Service Commission of the Borough of Carlisle*, 593 Pa. 448, 931 A.2d 646 (2007), our Supreme Court "acknowledge[d] that '[a]ppellate review of an adjudication of a municipal civil service commission is limited to determining whether constitutional rights have been violated, an error of law has been committed[,] or findings of fact necessary to support the adjudication are not supported by substantial evidence.'" *Id.* at 650 (quoting *Lewis v. Civil Serv. Comm'n of Phila.*, 518 Pa. 170, 542 A.2d 519, 522 (1988));[1] *see also Tegzes v. Twp. of Bristol*, 504 Pa. 304, 472 A.2d 1386 (1984).[2]

In *Veit v. North Wales Borough*, 800 A.2d 391 (Pa.Cmwlth.2002), the borough sought review of a trial court order reversing the commission's decision to terminate the police chief's employment. This Court stated:

---

1. On remand, in *Day v. Civil Service Commission of the Borough of Carlisle*, 948 A.2d 900, 907 (Pa.Cmwlth.2008), this Court stated:

 **Where a full and complete record is made of the proceedings before a municipal civil service commission, a reviewing court must affirm** the adjudication unless it violates constitutional rights, is not in accordance with the law, it violates the procedural provisions of the local agency law, or the commission's findings are not supported by substantial evidence.

 (Emphasis added).

2. The *Tegzes* Court held:

 Our review of the actions of a municipal civil service commission is limited. **Where a full and complete record is made of the proceedings before a municipal civil service**

 commission, a reviewing court must affirm the adjudication** of the commission unless it is in violation of the constitutional rights of the appellant or not in accordance with law, the procedural provisions of the local agency law are violated, or a finding of fact of the commission necessary to support its adjudication is not supported by substantial evidence[.]

 *Id.* at 1387 (emphasis added). Although *Tegzes* involved a first class township, and not a borough, Section 645 of the First Class Township Code, Act of June 24, 1931, P.L. 1206, *as amended*, added by Section 20 of the Act of May 27, 1949, P.L.1955, 53 P.S. § 55645, also included the language: "as the court deems proper." That section was later repealed in part pursuant to the Act of September 29, 1961, P.L. 1745 and Section 2 of the Act of December 19, 1990, P.L. 1343.

We ... note that the trial court improperly drew its own findings of fact. **Where the trial court took no additional evidence because a complete record was developed before the agency, appellate review of a municipal civil service commission adjudication is limited to determining whether constitutional rights have been violated, an error of law has been committed, or findings of fact necessary to support the adjudication are not supported by substantial evidence.** Here, a complete record was made before the Commission. Therefore, the issue before us, **as it should have been with the trial court,** was whether, under the facts found by the Commission, Veit suffered a deprivation of his constitutional rights because he did not have a pre-termination hearing.

*Id.* at 397 (citations omitted; emphasis added).

This Court in *In Re: Zimmett,* 28 Pa. Cmwlth. 103, 367 A.2d 382 (1977), stated:

Our scope of review in a **borough civil service appeal where the court below has not taken additional evidence is limited to determining whether the commission abused its discretion or committed an error of law.** *Banks v. [Bd.] of [Comm'rs] of Upper Moreland [Twp.],* 7 Pa.Cmwlth. 393, 298 A.2d 923 (1973); *Gabauer v. Civil Service [Comm'n],* 6 Pa.Cmwlth. 646, 297 A.2d 507 (1972). In exercising this review, we are mindful of the role of courts in reviewing borough civil service appeals. Our Supreme Court has said in *Baker Case,* 409 Pa. 143, 185 A.2d 521, 523 (1962), that '[t]he **function of the courts is merely to make sure that just cause for dismissal exists, both factually and legally, and that the municipal officials have not abused their discretion in imposing the punish**ment in question. It is **not** our function to decide what we would have done under the circumstances if we had been [the employee's] superiors.'

*Zimmett,* 367 A.2d at 383 (bolded emphasis added).

In *McNaughton v. Civil Service Commission of the Borough of Camp Hill,* 168 Pa.Cmwlth. 395, 650 A.2d 1157 (1994), this Court affirmed the trial court's dismissal of an appeal of a police officer's suspension, stating:

In deciding issues of substantial evidence, 'a reviewing court will examine, but not weigh the evidence since the factfinding tribunal is in a better position to find the facts based upon the testimony and the demeanor of the witnesses. The court may not substitute its judgment for that of the agency.' *Civil [Serv. Comm'n] v. Poles,* 132 [Pa.Cmwlth.] 593, 573 A.2d 1169, 1172 (1990), *petition for allowance of appeal dismissed,* 530 Pa. 31, 606 A.2d 1169 (1992). Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, [but must be] ... more than a scintilla and must do more than create a suspicion of the existence of the fact to be established.' *Lewis [v. Civil Serv. Comm'n],* 518 Pa. [170], 542 A.2d [519,] 522 [(1988)] (citations omitted).

After review of the record, we determine that Common Pleas did not err as there is substantial evidence of record to support the Commission's determination.... While there is conflicting evidence contained in the record, **resolving these conflicts is beyond our scope of review, and is a function better suited to the fact finder, in this instance, the Commission.** *Poles; Gallagher v. [Phila.] Civil [Serv. Comm'n],* 16 [Pa. Cmwlth.] 279, 330 A.2d 287 (1974).

*McNaughton,* 650 A.2d at 1159–60 (emphasis added).

In *Skrzysowski v. Attardo,* 63 Pa. Cmwlth. 636, 438 A.2d 1031 (1982), this Court determined that the trial court, when reviewing the township board of supervisors' decision to terminate a police officer's employment, properly considered whether the board had abused its discretion or committed an error of law. This Court recognized:

> Our scope of review . . . is the **same scope of review as under the Borough Code**[3] or First Class Township Code[.] **Where the court below has taken no additional evidence we are limited to a determination of whether the Board abused its discretion or committed an error of law**[.]

3. Act of February 1, 1966, P.L. (1965) 1656, *as amended,* formerly 53 P.S. §§ 45101–48501. The Act of April 18, 2014, P.L. 432, amended Title 8 of the Pennsylvania Consolidated Statutes to consolidate The Borough Code. The Borough Code is now codified at 8 Pa.C.S. §§ 101–3501.

4. The Majority discounts these cases because therein, "the scope of the trial court's authority . . . was not a contested issue." Majority op. at 817 n. 10. Whether the scope of the trial court's authority was contested does **not** change the applicable scope of review which was described in each of the cited cases. Without further distinguishing the other twelve cases cited in this Dissent which clearly support a reviewing court's limited scope of review, the Majority also claims that *Zimmett* and *Borough of Jenkintown,* decided under the former Section 1191 of the Borough Code, are inapposite because they address a commission's modification of a borough's imposed discipline rather than the trial court's authority to modify a commission imposed discipline. First, as the Majority acknowledges, the language of former Section 1191 of the Borough Code was "essentially identical" to that in the current consolidated Borough Code. Majority op. at 814 n. 7. Further, in reaching its decision, the *Zimmett* Court relied upon the case of *Eppolito v. Bristol Borough,* 19 Pa.Cmwlth. 99, 339 A.2d 653 (1975), wherein, this Court reversed the trial court

*Id.* at 1031–32 (citation and footnote omitted; emphasis added). These cases demonstrate that our Supreme Court and this Court recognized the **limited** role of a reviewing court in borough civil service commission cases. *See also Borough of Jenkintown v. Civil Serv. Comm'n,* 84 Pa. Cmwlth. 183, 478 A.2d 941 (1984); *Appeal of Gregory,* 30 Pa.Cmwlth. 589, 374 A.2d 772 (1977).

**No new evidence was presented to the trial court in the instant action.** Thus, as mandated by *Keslosky, McAndrew, Borough of East McKeesport, Day, Tegzes, Veit, Zimmett, Banks, Gabauer, McNaughton, Poles, Skrzysowski, Borough of Jenkintown* and *Appeal of Gregory,*[4] the trial court was required to affirm

after the trial court, **as in the instant case,** modified a penalty imposed by a borough civil service commission. The *Zimmett* Court stated:

> In determining whether the Commission abused its discretion, we note that in [*Baker Case,* 409 Pa. 143, 185 A.2d 521 (1962)], the Court indicated that '[u]nder the scheme established by the civil service acts, primary responsibility and decision as to the methods necessary to uphold police morale and efficiency and to maintain public confidence in the police department resides in the municipal officials.' [*Id.*] at 523. In *Eppolito v. Bristol Borough,* 19 Pa.Cmwlth. 99, 339 A.2d 653 (1975), we reaffirmed this principle by recognizing that the borough council, acting as the employer, has primary discretion as to whether or not a policeman should be dismissed. **While in** *Eppolito* **we were concerned with a lower court's abusing its discretion by modifying a council action, we feel our reasoning has equal validity in the instant case.**

*Zimmett,* 367 A.2d at 384 (emphasis added). Thus, the *Zimmett* Court extended the rationale applied in *Eppolito,* **a case procedurally similar to the instant one,** to cases involving a commission's modification of a borough imposed discipline. Accordingly, *Zimmett* is not inapposite. It is noteworthy that the Court in *Zimmett,* also stated: "It is necessary that both **court** and commission give due respect

the Commission's adjudication "unless it violate[d] constitutional rights, [was] not in accordance with the law, or the findings of fact [were] not supported by substantial evidence." *Keslosky*, 73 A.3d at 670 n. 5.

The Commission found that:

Officer Johnson did not disclose to either [the District Justice] or the District Attorney's office that the reason he missed the hearing was that he forgot.... Officer Johnson did not disclose to either [the District Justice] or the District Attorney's office the two supposed explanations as to why [sic] reasons he 'forgot'.... Rather, because he omitted the undisputed fact that he forgot, the message that was conveyed to [the District Justice] and the District Attorney's office was that he was physically not able to attend because he was sick.

Reproduced Record (R.R.) at 765a. The Commission also stated, "Officer Johnson's behavior demonstrated a repetitive pattern of missed hearings. His behavior showed dishonesty with the Court and the Montgomery County District Attorney's office." R.R. at 773a.

The trial court, however, found:

**The Commission's ruling** regarding Charge [ ] 3 **that Johnson made false statements to the local District Justice was not supported by substantial evidence.** Indeed, the only statement Johnson provided to the court for the missed hearing was based on the undisputed fact of Johnson's sickness. Further, not only did ·Charge [ ] 3 fail to include language citing Johnson for not providing all of the reasons for missing the court hearing, but the omitted reasons were also not disputed. **Essentially, since the only statement made to District Justice Borek was truthful, albeit not the complete or full rationale,** there is insufficient evidence that a reasonable mind might accept as adequate to support the Commission's conclusion.

Trial Ct. Op. at 5 (emphasis added). The trial court also found for similarly-stated reasons that the Commission erred in sustaining Charge 4. Because the trial court concluded that Charges 3 and 4 should not have been sustained, it modified the Commission's penalty. This Court in *Hodgins v. Civil Service Commission, Borough of Wilkinsburg*, 57 Pa.Cmwlth. 474, 426 A.2d 1229 (1981) recognized that Section 1191 of the Borough Code, formerly 53 P.S. § 46191, empowered a court of common pleas to modify a commission's penalty "**only** if the Court in doing so does not itself commit an abuse of discretion." *Id.* at 1232 (emphasis added).[5]

---

and weight to the action of the duly constituted municipal body which is authorized to act with respect to charges against members of the police force." *Id.* at 384 (emphasis added). The *Borough of Jenkintown* Court relied on *Zimmett* and thus, *Borough of Jenkintown* is also not inapposite.

Finally, contrary to the trial court and Majority's conclusion that substantial evidence did not "support the Commission's finding that Johnson had made false statements because it was uncontroverted that Johnson was sick on the day of the preliminary hearing[,]" that is not the statement for which he was disciplined. Majority op. at 817 n. 10. Rather, he was disciplined for stating that he missed the hearing **because** he was sick, when he later admitted was not the reason he missed the hearing.

5. [T]his Court has held that under the Borough Code, **a borough council has primary responsibility and discretion for determining whether and how a police officer should be disciplined, and** both **the trial court** and the civil service commission *should give due respect and weight to the* **actions of this duly constituted municipal body.** Further, under Section 1191 of the Borough Code, 53 P.S. § 46191, a borough civil service commission has no authority to modify the penalties imposed by borough

Here, the trial court disregarded the substantial evidence which supported the Commission's findings and decision and then made its own findings of fact—"the only statement made to District Justice Borek was truthful, albeit not the complete or full rationale." Trial Ct. Op. at 5. The undisputed record evidence reveals that Johnson admitted at the May 26, 2010 meeting, the *Loudermill*[6] hearing and the Commission hearings that he missed the preliminary hearing **because he forgot.** Although Johnson also explained that he was sick, he admitted that he would have attended the preliminary hearing if he had remembered. Johnson testified that he "had several issues going on in [his] life that were personal to [him]" and his sickness "was something that was weighing down on [his] mind which was drawing [his] attention away from [his] work." R.R. at 358a. However, the Commission found that "a direct causal relationship between [Johnson] being 'sick' [a sinus infection] and him forgetting the hearing was never established." R.R. at 762a–763a n. 2. The trial court disregarded this evidence and finding. In contrast, and contrary to the trial court's ruling, "the only statement made to [the] District Justice ... was [un]truthful...." Trial Ct. Op. at 5. Johnson did not merely tell the District Justice that he was sick; for if he had, as noted by the trial court, it is possible that he would not have communicated a falsehood. Instead, Johnson told the District Justice that he **missed the hearing be-**

*cause* **he was sick,** rather than the real reason—that he forgot about the hearing.[7]

The word "false" is defined as "adjusted or made so as to deceive," and "intended or tending to mislead." *Merriam-Webster's Collegiate Dictionary* 451 (11th ed.2004). Johnson testified at the hearing before the Commission that his illness did not prevent him from attending the preliminary hearing. He stated, "I was sick. **But I would have attended the hearing had I recalled I had the hearing."** R.R. at 410a–411a (emphasis added). The record evidence supports the Commission's conclusion that Johnson forgot about the hearing and his alleged illness is not the reason that Johnson **missed the hearing.** Thus, Johnson's communication to the District Justice and the statement contained in his letter to the District Attorney's office were falsehoods, intended to mislead the District Justice and the District Attorney's office that he had a legitimate reason for his absence—sickness.

The record does not support the trial court vacating and reversing the Commission's findings and conclusions regarding Charges 3 and 4 on the grounds that they were inconsistent with its conclusion relative to Charge 2. Contrary to the trial court's statement relative to Charge 2, the Commission **did not** "determine[ ] ... that Johnson's multiple explanations did not constitute deliberate lies."[8] Trial Ct. Op. at 5. Rather, the Commission found that Lansdale Borough (Borough) had "not pre-

---

officials for violations of the Code where the commission finds that the charges against the officer are supported by the evidence and the penalties imposed are not otherwise prohibited.
*Borough of Edgeworth v. Blosser,* 672 A.2d 854, 856 (Pa.Cmwlth.1996) (emphasis added).

6. *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985).

7. Johnson's letter to the District Justice reads in pertinent part: "I did not attend the Preliminary Hearing *because* he [sic] was home sick." R.R. at 657a (emphasis added).

8. The trial court mischaracterized the Commission's findings in this regard. The Commission found that the Borough had not provided sufficient evidence to substantiate Charge 2. However, the trial court interpreted that finding as an affirmative determination by the Commission that "Johnson's multiple

sented **sufficient clear and convincing evidence** to substantiate [the] charge." R.R. at 764a (emphasis added). The Commission explained that given the minor inconsistencies in the testimony of the Borough's witnesses and the lack of a contemporaneous record, it was not sufficiently clear to the Commission that **the multiple excuses Johnson communicated to Chief McDyre** constituted deliberate lies.

However, the facts underlying Charge 2 and those supporting Charges 3 and 4 were completely different and pertained to separate factual representations made by Johnson to the District Justice and the District Attorney's office. In contrast to the multiple explanations Johnson gave at the May 26, 2010 meeting with his employer, Johnson **gave only one excuse** to the District Justice and the District Attorney's office—that · he had missed the hearing **"because he was home sick."** [9] R.R. at 657a (emphasis added). Since Johnson admitted that his sickness would not have prevented him from attending the hearing had he remembered it, his statement to the District Justice and the District Attorney's office that he missed the hearing **because** he was sick was false, communicated to "deceive" or "mislead" about the true reason for his absence. *Merriam–Webster's Collegiate Dictionary* 451 (11th ed.2004). Accordingly, the Commission's rulings on Charges 3 and 4 **were** sup-

ported by substantial evidence and were not inconsistent with the Commission's findings on Charge 2. Thus, the trial court abused its discretion by disregarding the Commission's findings of fact that were supported by substantial evidence and making its own findings where it took no new evidence.

The trial court improperly re-weighed the evidence, substituted its judgment for that of the Commission, and made factual findings that were not supported by substantial evidence.[10] I would therefore hold that the trial court erred when it modified the Commission's determination.

---

explanations did not constitute deliberate lies." Trial Ct. Op. at 5. That interpretation is not supported by the Commission's finding.

9. Johnson testified that he told Chief McDyre "that [he] had already met with District Justice Al Borek and explained to him that I was sick **is the reason that I had told him for missing court on that date.**" R.R. at 285a (emphasis added).

10. The trial court further stated that "[t]here was ... not substantial evidence to support an expansive reading of Charge [ ] 3 [and Charge [ ] 4] to encompass any omitted statements." Trial Ct. Op. at 5–6. The trial court

reasoned that since Johnson's statement about being sick was "truthful, albeit not the complete or full rationale," it concluded that the Commission imposed an unwarranted obligation on Johnson to provide the District Justice and the District Attorney's office with "full and complete" reasons for his absence. *Id.* Such is not the case. The Commission determined, based on Johnson's admission, that Johnson stated that he did not appear at the hearing *because* he was sick, which information was "false"—"tending to mislead." *Merriam–Webster's Collegiate Dictionary* 451 (11th ed.2004).