IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| George Johnson | : | |
| | : | |
| v. | : | No. 134 C.D. 2013 |
| | : | Submitted: December 16, 2016 |
| | : | |
| Lansdale Borough and Lansdale | : | |
| Borough Civil Service Commission, | : | |
| Appellants | : | |


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
                 HONORABLE ANNE E. COVEY, Judge
                 HONORABLE DAN PELLEGRINI, Senior Judge


OPINION
BY PRESIDENT JUDGE LEAVITT[1]               FILED: March 1, 2018

      On remand from the Pennsylvania Supreme Court, we review an order of the Court of Common Pleas of Montgomery County (trial court) that modified the Lansdale Borough Civil Service Commission's discipline of Lansdale Borough police officer George Johnson. The Borough Commission affirmed the Borough's termination of Johnson's employment in spite of ruling that the Borough did not prove the four charges it lodged against Johnson. After Johnson's further appeal, the trial court affirmed the Borough Commission in part but reversed its ruling on two charges. The trial court held that the single remaining and sustained charge did not warrant Johnson's removal and, thus, modified the discipline to a 30-day

---

[1] The panel of judges that heard this case voted 2 to 1 to affirm. Pursuant to our opinion circulation rules all commissioned judges voted on the opinion. Because one commissioned judge recused, a tie vote resulted. Accordingly, this opinion is being filed pursuant to Section 256(b) of the Internal Operating Procedures of the Commonwealth Court, 210 Pa. Code §69.256(b).

suspension without pay.  This Court affirmed the trial court, and the Supreme Court vacated this Court's order.  It did so because this Court proceeded on the incorrect premise that the trial court's review of the Borough Commission's adjudication was *de novo*.  The Supreme Court held that the trial court's review was governed by the narrower contours set forth in Section 754(b) of the Local Agency Law[2] and remanded for this Court's reconsideration of the trial court's decision using the correct standard.  Following reconsideration on remand, we affirm the trial court.

## Factual and Procedural Background

Johnson, a Borough police officer since 1997, did not appear before the district justice to testify at a preliminary hearing on May 18, 2010, in a driving under the influence (DUI) case in which Johnson had been the arresting officer.  Because Johnson was not scheduled to work the day of the hearing, the police department could not give the prosecutor information that might have allowed the district justice to reschedule the hearing.  Accordingly, the district justice dismissed the DUI charges against the defendant.

---

[2] It provides:

> In the event a full and complete record of the proceedings before the local agency was made, the court shall hear the appeal without a jury on the record certified by the agency. After hearing the court shall affirm the adjudication unless it shall find that the adjudication is in violation of the constitutional rights of the appellant, or is not in accordance with law, or that the provisions of Subchapter B of Chapter 5 (relating to practice and procedure of local agencies) have been violated in the proceedings before the agency, or that any finding of fact made by the agency and necessary to support its adjudication is not supported by substantial evidence. If the adjudication is not affirmed, the court may enter any order authorized by 42 Pa.C.S. § 706 (relating to disposition of appeals).

2 Pa.C.S. §754(b).

2

A criminal complaint dismissed at a preliminary hearing may be reinstituted so long as the statute of limitations has not run. *Commonwealth v. Thorpe*, 701 A.2d 488, 489 (Pa. 1997). However, the decision to reinstitute charges must be made by the prosecutor. PA.R.CRIM.P. 544, *comment*.[3] When Johnson returned to work on May 19, 2010, he realized he had missed the preliminary hearing and began the process necessary to have the DUI charges reinstated.

On May 26, 2010, the Borough Chief of Police, Robert McDyre, called Johnson into his office to discuss his absence from the preliminary hearing. Sergeant Richard Bubnis and Sergeant Alex Kromdyk were also present for the interview, which lasted approximately 15 minutes. The interview was not recorded, and there is some disagreement about what was said there.

---

[3] Rule 544 authorizes the reinstitution of criminal charges that are "dismissed at, or prior to, the preliminary hearing." PA.R.CRIM.P. 544. The comment explains that the dismissed charges can only be reinstituted by the district attorney. The comment states, in relevant part, as follows:

> *Comment:* This rule provides the procedures for reinstituting criminal charges following their withdrawal or dismissal at, or prior to, the preliminary hearing as provided in Rule 543, or after the complaint is dismissed when a grand jury declines to indict.
>
> * * *
>
> The decision to reinstitute charges must be made by the attorney for the Commonwealth. Therefore, in cases in which no attorney for the Commonwealth was present at the preliminary hearing, the police officer may not re-file the complaint without the written authorization of the attorney for the Commonwealth. *See* Rule 507 (Approval of Police Complaints and Arrest Warrant Affidavits by Attorney for the Commonwealth—Local Option) for procedures for prior approval of complaints.

PA.R.CRIM.P. 544, *comment*.

In *Commonwealth v. Stehley*, 504 A.2d 854, 861 (Pa. Super. 1986), the Pennsylvania Superior Court held that where the Commonwealth is aggrieved by a magistrate's dismissal or reduction of criminal charges, it may refile the charges. However, the criminal defendant must be "allowed an opportunity to argue against the right to refile." *Id.* at 861.

Johnson stated that he forgot about the preliminary hearing, which was scheduled for a day when he was off work. Chief McDyre asked Johnson if he would try to reinstate the charges and whether reinstatement was even possible where the officer has forgotten to attend the preliminary hearing. Johnson responded that he had already discussed the matter with the district justice and told him that he had been sick on the day of the hearing. Johnson also stated that he had begun drafting a letter to the district attorney in an effort to get the charges reinstated. McDyre requested a copy of the draft letter, which Johnson retrieved, and it stated as follows:

> *I did not attend the Preliminary Hearing because he [sic] was home sick.* My department was unaware of this because I was on a scheduled day off and I did not notify them [sic] of my illness until I returned to work. [The district justice] was not notified by me of the situation until several days later and he had already dismissed the case.

Reproduced Record at 657a (R.R. __) (emphasis added).

McDyre read the letter and opined that it was a lie, in view of Johnson's earlier statement to McDyre that he had forgotten about the hearing. Johnson replied that he was, in truth, sick and in bed for most of that day, which is why he forgot the hearing. Johnson also stated that he would have attended the hearing had he remembered it, notwithstanding his sickness. Concluding that Johnson had been untruthful to the district justice and in his draft letter to the district attorney, McDyre placed Johnson on administrative leave.

On June 10, 2010, the Borough conducted a *Loudermill* hearing.[4] In attendance were the Borough mayor, Sergeant Bubnis, Sergeant Kromdyk, as well

---

[4] In *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985), the U.S. Supreme Court held that because a public employee has a property interest in his position, he is entitled to a pre-termination hearing that satisfies the requirements of due process.

4

as Johnson and his union representative, Officer Justin DiBonaventura. The purpose of the hearing, which lasted approximately five minutes, was to give Johnson an opportunity to explain why he should not be fired. Johnson recalled that on May 17, 2010, he "called in sick" and did not work because of a sinus migraine headache. Notes of Testimony (N.T.), 7/26/2010, at 81; R.R. 267a. The next day, which was the day of the preliminary hearing on the DUI case, Johnson was not scheduled to work.[5] Johnson stated that he left home to do an errand in the morning. Because he began to feel ill, he returned home, took medicine and went to bed. Chief McDyre recommended that Johnson's employment be terminated for lying about his reason for missing the preliminary hearing.

On June 18, 2010, the Borough issued the following statement of charges to Johnson:

> 1. You failed to appear as required at a preliminary hearing at Lansdale District Court on Tuesday May 18, 2010, resulting in the dismissal of that case. You were properly subpoenaed by the Lansdale District Court to appear and testify at this criminal proceeding. You did not notify anyone of any inability on your part to appear for this hearing. Further, this is [the] fourth occurrence in which you have failed to appear at court when subpoenaed to do so. This act constitutes a violation of the Code of the Borough of Lansdale, Civil Service Commission, Chapter Seven, Section 7.A., Subsections (1)(b) and (d) as well as Procedural Directive # 6, Code of Conduct, Section I, Subsections B(2) and (4).
>
> 2. When you were questioned as part of an official investigation regarding the missed court hearing, you were ordered to answer honestly and completely. During the interview it was revealed that you were untruthful as to the reason you failed to attend the hearing. This act constitutes a violation of the Code of the

---

[5] Johnson did not report to work because of a "squad day." A "squad day" is personal time that accumulates over the course of working numerous 12–hour shifts. Although an officer does not work on a squad day, it does not relieve him of an obligation to attend a court hearing.

Borough of Lansdale, Chapter Seven, Section 7.A., Subsections (1)(b) and (d) and Procedural Directive # 6, Code of Conduct, Section I, Subsection B(4).

3. You made false statements to the Court as to the reason you had missed the court proceeding. This act constitutes a violation of the Code of the Borough of Lansdale, Chapter Seven, Section 7.A., Subsections (1)(b) and (d) as well as Procedural Directive # 6, Code of Conduct, Section I, Subsection B(4).

4. You prepared a document to the District Attorney's office in which you falsely stated the reason you had missed a preliminary hearing and you requested "re-arrest" permission based on the false statement. This act constitutes a violation of the Code of the Borough of Lansdale, Chapter Seven, Section 7.A., Subsections (1)(b) and (d) as well as Procedural Directive # 6, Code of Conduct, Section I, Subsection B(4).

R.R. 635a-36a.

The stated grounds for all four charges were the same: the Borough's Civil Service Ordinance and the Borough's Rules of Conduct for Police Officers. The Civil Service Ordinance states, in relevant part, as follows:

A. Grounds for disciplinary action.

(1). No person appointed to a position in the Police Department pursuant to these rules and regulations may be suspended without pay or removed and no person promoted in rank pursuant to these rules and regulations may be reduced in rank except for the following reasons:

* * *

(b)    Neglect or violation of any official duty;

* * *

(d)    Inefficiency, neglect, intemperance, disobedience of orders or conduct unbecoming an officer[.]

6

CODE OF THE BOROUGH OF LANDSDALE, Chapter 7, Civil Service Commission, §7-7.A., "Suspensions, removals and reductions in rank"; R.R. 614a. Similarly, the Police Department's Rules of Conduct state as follows:

> B.   Police Officers employed in the Police Department of the Borough shall not be suspended, removed or reduced in rank except for the following reasons:
>
> * * *
>
> 2.   Neglect or violation of any official duty[.]
>
> * * *
>
> 4.   Inefficiency, neglect, intemperance, disobedience of orders, or conduct unbecoming an officer[.]

Landsdale Borough Police Department, Procedural Directive #6, Rules of Conduct, Section I; R.R. 612a. In sum, the Borough based its removal decision upon neglect or violation of duty, inefficiency, disobedience of orders and conduct unbecoming of an officer.

On June 23, 2010, the Borough Council voted to remove Johnson from his position as a police officer. Johnson appealed to the Borough's Civil Service Commission, which conducted hearings over the course of four days.

Chief McDyre testified that, based upon his interview of Johnson at the May 26, 2010, meeting and Johnson's statements at the *Loudermill* hearing, he believed Johnson should be discharged.

Sergeant Bubnis, who was Johnson's supervisor, testified that when he learned that Johnson did not appear at the May 18, 2010, preliminary hearing, he reported that fact to Chief McDyre, who called the meeting on May 26, 2010. Bubnis testified that at this meeting, Johnson apologized for missing the preliminary

hearing, which he had forgotten. Johnson also stated that he had already apologized to the district justice, to whom he had explained that he had been sick that day. Bubnis stated that when Johnson was challenged by Chief McDyre about changing the explanation from forgetfulness to illness, Johnson stated that "one of the reasons he forg[o]t was because he was sick." N.T., 7/26/2010, at 17; R.R. 203a. Sergeant Alex Kromdyk testified that Johnson stated at the May 26, 2010, meeting that he forgot about the hearing.

Johnson testified on his own behalf. He explained that on May 13, 2010, his seven-year-old son was attacked by his neighbor's pit bull and suffered significant injuries to his right thigh and left arm. On May 14 and 15, Johnson worked his scheduled shifts. On May 16 he was not scheduled to work. On Monday, May 17, he awoke with a migraine headache, called in sick, took medicine and slept most of the day. Johnson testified that he has a history of sinusitis, which can lead to migraine headaches. Johnson's chronic sinusitis has caused bronchitis and pneumonia in the past.

Johnson testified that on May 18, 2010, the day of the preliminary hearing, he "woke up sore from the migraine headache." *Id.* at 83; R.R. 269a. He went to the municipal building to vote in the primary and to follow up on the police report that he had filed about his son's dog bite. By noon, feeling worse, he went home, took medication prescribed for his sinus infection and went to bed. He did not realize that he had missed the preliminary hearing until he went to work the next day. He told Sergeant Bubnis that he missed the hearing because he had been sick and also that he had been "very upset by the issue of what happened to [his] son with [the] dog." *Id.* at 86; R.R. 272a.

8

As to the May 26, 2010, meeting, Johnson testified that he told McDyre that he forgot the preliminary hearing for two reasons, *i.e.,* his son's injury and his illness. Johnson recalled McDyre's insistence that Johnson had not been sick at all but had just forgotten about the hearing. When McDyre threatened to fire Johnson if he lied again, Johnson responded that he had not lied. Rather, he explained that his illness combined with his apprehension over his son's injury caused him to forget the hearing.

Johnson also testified that at the *Loudermill* hearing he specifically asked McDyre why he believed Johnson had made false statements. McDyre replied that Johnson had changed his explanation for missing the hearing from forgetfulness to his son's injury and illness. Johnson denied the accusation, stating that he had forgotten about the hearing because his illness and his son's condition were foremost in his mind. Johnson again stated that had he remembered the preliminary hearing, he would have appeared in spite of his illness.

Officer DiBonaventura, who has worked as a police officer for the Borough for 21 years, including 12 as a detective, testified on Johnson's behalf. DiBonaventura testified that McDyre's May 26, 2010, interview of Johnson was procedurally flawed because there were no notes taken during the interview. Once McDyre came to the belief that Johnson lied, McDyre should have written down the specific questions he had asked and Johnson's precise responses. Johnson should have then been allowed to read and sign the synopsis of the meeting, which would have resolved the discrepancies about what was said by whom that day. DiBonaventura further testified that a stenographic or audio recording of such an interview should be made where an officer's career is at stake.

DiBonaventura testified that he was present at Johnson's *Loudermill* hearing as a union representative. His notes of the hearing showed that McDyre and Johnson disagreed. Johnson stated that he had provided two reasons for missing the preliminary hearing, and McDyre believed that Johnson changed his story.

Next to testify was Lawrence Miller, D.O., Johnson's family physician. Dr. Miller confirmed that Johnson has a history of chronic sinusitis and has had several bouts with pneumonia. Dr. Miller testified that at the end of March 2010 he prescribed Levaquin to address Johnson's sinus problems. When Dr. Miller saw Johnson on May 24, 2010, his congestion and cough were so severe that he ordered a computerized axial tomography scan of Johnson's sinuses. Dr. Miller opined that Johnson had been sick on May 17 and May 18, 2010, because of the severity of his illness on May 24, 2010.

Finally, Johnson offered the testimony of Detective Sergeant Joseph Bennis of the Montgomery Township Police Department. Bennis, who has known Johnson for several years, testified that on May 18, 2010, at approximately 11:00 a.m., he encountered Johnson and his wife in the municipal building. Johnson declined to shake Bennis' hand, stating that he was not feeling well and did not want to pass along any germs.

## Borough Civil Service Commission Decision

The Commission made findings on each of the Borough's four charges against Johnson. It sustained three of the four charges as supported by substantial evidence. It upheld the Borough's removal of Johnson from his position.

On Charge 1, failure to appear at the preliminary hearing, the Commission found that, by his own admission, Johnson did not attend the hearing

10

and did not notify the district justice, assistant district attorney or the police that he would not attend. Accordingly, the Commission sustained Charge 1.

On Charge 2, being untruthful when questioned on May 26, 2010, the Commission held that the Borough did not make its case because it did not

> provide substantial competent evidence sufficient to convince the Commission that Officer Johnson's dissembling as to the reason for the missed hearing *constituted deliberate lies* during the May 26th meeting.

Commission Adjudication, 10/28/2010, at 8; Finding of Fact No. 21; R.R. 763a (emphasis added). The Commission explained that

> the Borough did not convincingly demonstrate that during this meeting Officer Johnson's admitted provision of multiple and contradictory explanations as to the missed May 18th hearing were "lies" or that Officer Johnson did not "fully respond to the questions" he was asked.

*Id*. at 9, Finding of Fact No. 24; R.R. 764a. The Commission agreed with Officer DiBonaventura's criticism that Chief McDyre did not follow accepted procedures at the interview on May 26, 2010. McDyre should have made a contemporaneous record of the precise questions put to Johnson and his precise responses. The Commission granted Johnson's appeal with respect to Charge 2.

On Charge 3, making a false statement to the district justice, the Commission sustained the charge. The Commission noted that Johnson testified that he forgot to attend the hearing for two reasons, *i.e.,* his illness and his son's dog bite. Johnson also testified that he offered one reason to the district justice, *i.e.,* that he "had been sick that day" because he wanted "to keep the other stuff personal." N.T., 7/26/2010, at 175; R.R. 361a. Because Johnson did not provide a full explanation to the district justice, the Commission found that Johnson made a false statement.

11

Specifically, the Commission found that "the message that was conveyed to [the district justice] was that he was physically not able to attend because he was sick." Commission Adjudication, 10/28/2010, at 10; Finding of Fact No. 29; R.R. 765a.

On Charge 4, preparing a "document to the District Attorney's office in which you falsely stated the reason you had missed a preliminary hearing," R.R. 636a, the Commission sustained the charge. It reasoned that Johnson "did not disclose to … the District Attorney's office the two supposed explanations as to why … he 'forgot.'" Commission Adjudication, 10/28/2010, at 10; Finding of Fact No. 28; R.R. 765a.

In sum, the Commission held that the Borough made a case on Charges 1, 3, and 4 but not on Charge 2. Based on these rulings, the Commission upheld the Borough's removal of Johnson from his position as a police officer.

## Trial Court Decision

Johnson appealed to the trial court, which did not take additional evidence but heard oral argument. The trial court affirmed the Commission on Charge 1 because it was undisputed that Johnson failed to appear at the preliminary hearing. The trial court affirmed the Commission's finding on Charge 2 that the Borough did not prove that Johnson was untruthful at the May 26, 2010, interview. The trial court reversed the Commission on Charges 3 and 4.

In doing so, the trial court reasoned that the Commission's findings on Charges 2, 3 and 4 could not be reconciled. First, the Borough did not present evidence that Johnson was healthy on May 18, 2010, and the Commission did not find as fact that Johnson was not sick on May 18, 2010. Accordingly, Johnson's statement that he was sick was true, not false. Second, the Commission specifically found, on Charge 2, that Johnson's somewhat inconsistent reasons for missing the

12

hearing were not "deliberate lies" and, thus, not untruthful. Accordingly, the Commission's finding that Johnson made a false statement in stating that he was sick to the district justice could not be reconciled with the Commission's finding in Charge 2 that this same statement was not untruthful. The trial court reversed the Commission's rulings on Charges 3 and 4 and modified the Borough's discipline to a 30-day suspension. The Borough appealed to this Court.

## Commonwealth Court Decision

On appeal, this Court affirmed the trial court's order. In doing so, we held that a trial court's review of a municipal civil service commission's disciplinary order is *de novo*. *Johnson v. Lansdale Borough*, 105 A.3d 807 (Pa. Cmwlth. 2014).[6] Specifically, we held that the trial court's "rejection of the Commission's conclusion on Charges 3 and 4 was appropriate in a *de novo* review." *Id.* at 817. The dissent would have reversed. The dissent concluded that where a trial court does not take additional evidence, the trial court reviews the commission adjudication for abuse of discretion or error of law. *Id.* at 820. The dissent believed that the Commission's rulings on "Charges 3 and 4 were supported by substantial evidence and were not inconsistent with the Commission's findings on Charge 2." *Id.* at 824. The dissent concluded that "the trial court abused its discretion by disregarding the Commission's findings of fact that were supported by substantial evidence and making its own findings where it took no new evidence." *Id.*[7]

---

[6] We based our decision on Section 1191(c) of the Borough Code, which authorizes a trial court to review a municipal civil service commission's decision and make a "determin[ation] as the court deems proper." 8 Pa. C.S. §1191(c). We also relied on existing case law, such as, *Lower Merion Township v. Turkelson*, 152 A.2d 724 (Pa. 1959), which held that the broad grant of discretion in Section 1191(c) provides for a *de novo* review.

[7] In its opinion and order, the trial court did not make any findings of fact but, rather, reviewed the Borough Commission's findings of fact against a substantial evidence challenge.

13

**Pennsylvania Supreme Court Decision**

On further appeal, in *Johnson v. Lansdale Borough*, 146 A.3d 696 (Pa. 2016), the Pennsylvania Supreme Court held that where, as here, the trial court does not take new evidence, it must review a civil service commission's decision under the deferential standard of appellate review set forth in Section 754(b) of the Local Agency Law, 2 Pa. C.S. §754(b).[8]   However, the Supreme Court explained that it granted *allocatur* to address only the trial court's standard of review.  It noted, specifically, that it "denied allocatur on the issue of whether the Commonwealth Court committed reversible error by affirming the trial court's disregard of factual findings made by the Commission, which were supported by substantial evidence of record." *Johnson*, 146 A.3d at 706 n.10.  Accordingly, the Supreme Court did not consider the Borough's argument that the trial court "erroneously substituted its judgment for that of the Commission." *Id*. at 706 n.11.  It reiterated that the issue of whether this Court erred by affirming the trial court was "beyond the scope of this appeal." *Id*. at 714 n.16.   The Supreme Court vacated this Court's order and remanded for this Court's review of the trial court's decision using the correct standard of review.

---

[8] The Pennsylvania Supreme Court held that Section 1191(c) of the Borough Code does not authorize *de novo* review in every appeal.  8 Pa. C.S. §1191(c).  Section 754 of the Local Agency Law directs a "*de novo* review where there is an incomplete record on appeal and [directs] limited, deferential review where the trial court proceeds on the record as made before the civil service commission." *Johnson*, 146 A.3d at 712.  The Pennsylvania Supreme Court "disapproved" the "*Turkelson* line of cases to the extent it provided for a broad *de novo* review by the trial court in appeals where no new evidence was presented" and adopted the "deferential standard of appellate review set forth in Section 754(b) of the Local Agency Law." *Id.* at 713.

14

The Borough's appeal to this Court is twofold. First, the Borough argues that the trial court erred in disturbing the Commission's conclusion on Charges 3 and 4. It argues that substantial evidence supports the Commission's findings that Johnson made a false statement to the district justice and in his draft letter to the district attorney. Second, the Borough claims that even if the trial court had properly concluded that the Commission's findings on Charges 3 and 4 were not supported by substantial evidence, the trial court erred in modifying the penalty from termination to suspension.

## Analysis

### A. Trial Court's Reversal of Charges 3 and 4

The central question is whether the trial court erred in reversing the Commission's ruling on Charges 3 and 4, which accused Johnson of making a false statement to the district justice and in his draft letter to the district attorney. The Borough contends that there is no inconsistency in the Commission's decision to dismiss Charge 2 while sustaining Charges 3 and 4.

The Commission dismissed Charge 2, which charged Johnson with being untruthful at the May 26, 2010, meeting. The Commission based this ruling on the following findings of fact:

> 21. The Commission finds that Chief McDyre and Sergeant Kromdyk both credibly testified as to their general recollection of the May 26th meeting. Both testified that Officer Johnson provided at least three different and somewhat contradictory reasons why he missed the preliminary hearing. Despite this conclusion, the Commission finds that *the Borough was unable to provide substantial competent evidence sufficient to convince the Commission that Officer Johnson's dissembling as to the*

15

*reason for the missed hearing constituted deliberate lies* during the May 26th meeting.

22. Although the Commission finds that at the May 26th meeting Officer Johnson offered several incompatible excuses for missing the preliminary hearing, *there were minor inconsistencies between the testimony of the Borough's participants at the May 26th meeting such as to cloud the recollection of the meeting and whether Officer Johnson engaged in lying* to hide his derelictions of duty.

\*\*\*

24. The Commission finds that *the Borough did not follow accepted investigatory procedures in regards to memorializing the May 26th meeting.* They did not create a contemporaneous written statement and instead relied on the subsequent memo created by Sergeant Kromdyk. Given the complexity of the May 26th meeting and the importance of recording the precise chronology and wording of the explanations offered by Officer Johnson, it was critical that a more complete and contemporaneous written record of the meeting be created. The Commission accepts the testimony of the Borough witnesses to the extent that their testimony demonstrated that Officer Johnson provided a false statement to the District Court and attempted to provide a false document to the Montgomery County District Attorney's office regarding his absence at the preliminary hearing. However, *without a better written record of the May 26th meeting, the Borough did not convincingly demonstrate that during this meeting Officer Johnson's admitted provision of multiple and contradictory explanations as to the missed May 18th hearing were "lies" or that Officer Johnson did not "fully respond to the questions" he was asked.*

Commission Adjudication, 10/28/2010, at 8-9; Findings of Fact Nos. 21, 22 and 24; R.R. 763a-64a (emphasis added) (internal citations to record omitted). In short, the Commission found, as fact, that Johnson's somewhat contradictory statements to Chief McDyre on why he missed the district magistrate hearing did not constitute "deliberate lies" and, thus, were not untruthful.

16

The Commission sustained Charges 3 and 4, which charged Johnson with making a false statement to the district justice and the district attorney. In so ruling, the Commission made the following findings of fact:

> 27. The Commission finds that Officer Johnson did not disclose to either Judge Borek or the District Attorney's office that the reason he missed the hearing was that he forgot.
>
> 28. The Commission finds that Officer Johnson did not disclose to either Judge Borek or the District Attorney's office the two supposed explanations as to why … he "forgot."
>
> 29. [Johnson] omitted the undisputed fact that he forgot, the message that was conveyed to [the district justice] and the [d]istrict [a]ttorney's office was that he was physically not able to attend because he was sick. This was stated in Officer Johnson's own words. *(See: Exhibit, B-8L, draft letter to Assistant District Attorney Christopher Maloney "I did not attend the Preliminary Hearing because he [sic] was home sick.")*

*Id.* at 10, Findings of Fact Nos. 27, 28, 29; R.R. 765a (emphasis in original) (internal citation to record omitted). Based on these findings of fact, the Commission found that the Borough "presented substantial and convincing evidence proving the third and fourth charges." *Id.*; R.R. 767a; Finding of Fact No. 36.

The trial court conducted its review of the Commission's adjudication under Section 754(b) of the Local Agency Law, 2 Pa. C.S. §754(b). To be precise, the trial court described its standard of review as "limited to determining whether the adjudication 'violates constitutional rights, is not in accordance with the law, [or] violates the procedural provision[s] of the local agency law, or the commission's findings are not supported by substantial evidence.'" Trial Court Rule 1925(a)[9] Op.

---

[9] It provides, in pertinent part, that

17

at 2 (quoting *Moorehead v. Civil Service Commission of Allegheny County*, 769 A.2d 1233, 1237-38 (Pa. Cmwlth. 2001)). Stated otherwise, the trial court reviewed the Commission's adjudication under the "narrow contours of Section 754(b) of the Local Agency Law," as our Supreme Court has directed. *See Johnson*, 146 A.3d at 714.

The trial court reversed the Commission's rulings on Charges 3 and 4 because substantial evidence of record did not support the Commission's findings on those charges. In doing so, the trial court relied upon the Commission's credibility determinations and did not make its own findings of fact. The trial court explained as follows:

> In concluding there was not substantial evidence to support the Commission's findings affirming Charges # 3 and # 4, *the Court did not make alternative findings of fact and conclusions of law or override the credibility determinations made by the Commission* as alleged by [the Borough on appeal]. Upon review of the Commission's Findings of Fact and subsequent Conclusions of Law, the Commission's Conclusions of Law are inconsistent with the Commission's Findings of Fact.

Trial Court Rule 1925(a) Op. at 6 (emphasis added). The trial court held that the Commission's findings of fact did not support its conclusions of law.

First, the trial court observed that the Commission's own factual findings showed only that Johnson omitted the fact that he forgot the hearing. It did not find that Johnson was untruthful when he stated that he was sick. It did not find

---

upon receipt of the notice of appeal, the judge who entered the order giving rise to the notice of appeal, if the reasons for the order do not already appear of record, shall forthwith file of record at least a brief opinion of the reasons for the order, or for the rulings or other errors complained of, or shall specify in writing the place in the record where such reasons may be found.

PA. R.A.P. 1925(a).

that Johnson was not sick. Johnson's illness on the day of the preliminary hearing was undisputed, as the trial court noted:

> [T]he Commission did not make any findings of fact that Johnson was not sick on the day in question. Even during oral argument, [the Borough] conceded *Johnson was at home, sick on the afternoon on which the preliminary hearing was scheduled*.

*Id.* at 3 (emphasis added).

Johnson made other statements as well. He stated that notwithstanding his illness, he would have attended the hearing had he remembered it because it was important. Johnson also stated at the May 26, 2010, meeting with his supervisors that he did not remember the hearing because of his illness and his child's injury. The trial court observed that there was no dispute in the record about the "veracity" of these other statements made by Johnson. *Id.* at 5. The Commission itself ruled that Johnson's multiple explanations did not constitute "deliberate lies" for purposes of the Borough's Charge 2, *i.e.*, being "untruthful as to the reason you failed to attend the hearing." R.R. 636a. The trial court held that it was a "contradiction in terms" for the Commission to hold that Johnson's statements were not untruthful with respect to Charge 2 but were false with respect to Charges 3 and 4.

Second, the trial court rejected the Commission's "expansive reading" of Charges 3 and 4. Trial Court Rule 1925(a) Op. at 5. Charges 3 and 4 accused Johnson of making false statements. They did not charge him with failing to provide "all of the reasons" for missing the preliminary hearing. *Id.* The Borough proved, at worst, that at times Johnson's statements were incomplete.

There is another reason to affirm the trial court decision on Charge 4, which charged Johnson with making a false statement in his draft letter to the district attorney. The Borough offered no evidence that anyone but Johnson and Chief

19

McDyre ever read the draft letter. A "statement," whether true or false, must be conveyed. In Finding of Fact No. 29, the Commission found that the "*message that was conveyed to … the District Attorney's office* was that he was physically not able to attend because he was sick." Commission Adjudication, 10/28/2010, at 10; Finding of Fact No. 29; R.R. 765a (emphasis added). This is incorrect because no message was conveyed to the District Attorney. The Commission characterized Johnson's statement as implying he was physically unable to attend. Regardless of whether this is a fair and accurate characterization, in actuality this "message" was *not* conveyed to the District Attorney.

We discern no error in the trial court's conclusion that the Borough did not make its case on Charges 3 and 4. The Borough did not charge Johnson with making incomplete or misleading statements but, rather, with making false statements. The Borough charged that Johnson's statement that he missed the hearing for illness was false, but the Commission's findings of fact do not support that conclusion. Nor did the Commission find Johnson's other proffered reasons for missing the hearing to be untruthful. Because the evidence did not prove that Johnson made a false statement, but only an incomplete statement, the Borough failed to substantiate Charges 3 and 4.

## 2. Trial Court Modification of Penalty

Next, the Borough asserts that even if we sustain the trial court's conclusion on Charges 3 and 4, the trial court erred or abused its discretion in modifying the penalty from a termination to suspension. The trial court modified the penalty based on Chief McDyre's testimony that if Johnson were guilty only of missing a hearing, he would not have recommended discharging him. The Borough argues that Chief McDyre had no authority to decide whether Johnson should be

20

discharged. Chief McDyre's job was to make a recommendation to the Borough Council, which must then accept, reject or modify the recommended penalty. The trial court's modified penalty is merely a "guess" as to what the Borough would have done had only Charge 1 been before it. Borough Brief at 36.

In support, the Borough cites *Banks v. Board of Commissioners of Upper Moreland Township*, 298 A.2d 923 (Pa. Cmwlth. 1973). In *Banks,* the township removed the police chief for inefficiency, neglect, intemperance in performance of duties, and conduct unbecoming an officer. The police chief appealed. The civil service commission upheld the charges, but in light of his 18 years of service, modified his punishment to a ten-month suspension and reduction in rank. The police chief appealed, and the trial court upheld the charges; however, it determined that the commission had erred in reducing the penalty. The trial court held that once the commission found sufficient evidence to support the charges, it had no discretion to alter the penalty. The police chief then appealed to this Court. We agreed that the commission had no authority to modify a penalty after finding, as a matter of law, that the township had proved the charges.

The Borough also directs the Court to *In re Appeal of Zimmett*, 367 A.2d 382 (Pa. Cmwlth. 1977). In that case, the borough demoted a police chief to patrolman after learning that he had been under the influence of intoxicants while on duty. The borough council then discharged him for intoxication and for violating police department policy. The borough civil service commission rejected the borough council's finding that the police chief had violated police department policy, but it upheld the charge of intoxication on duty. The commission modified the penalty from dismissal to suspension. On appeal, the trial court held that the commission abused its discretion by modifying the penalty and reinstated the

21

termination. This Court affirmed the trial court. The borough code permitted dismissal or suspension for intoxication on duty. The commission assumed that the borough council would have ordered suspension, as opposed to dismissal, had intoxication been the sole charge, but this was mere speculation.

Johnson responds that *Banks* is inapposite because in that case the civil service commission attempted to modify a penalty after upholding all of the borough's charges against the officer. He also responds that *Zimmett* was later clarified in *Herrmann v. Civil Service Commission of Borough of Jenkintown*, 478 A.2d 961 (Pa. Cmwlth. 1984), to mean that where the most serious charge is upheld, the commission cannot modify the borough's penalty.

In *Herrmann*, a police officer was suspended indefinitely for several acts of misconduct while on duty, which included drinking alcohol, smelling of alcohol and hitting a borough employee. The borough civil service commission sustained one charge, *i.e.*, the charge that the officer's breath smelled of alcohol. As a result, the commission modified the suspension of indefinite duration to a four-and-a-half-month suspension. Both parties appealed, and the trial court ordered a one-year suspension.

On further appeal, this Court reversed the trial court. In doing so, we reviewed the relevant precedent, beginning with *Borough of Bristol v. Downs*, 409 A.2d 467 (Pa. Cmwlth. 1979).

In *Borough of Bristol*, two boys asked a police officer for a ride home in the officer's patrol car because of rain. The officer transported them to a location four blocks outside of the borough. While stopped, the patrol car was hit by another vehicle. No one was injured, but the officer was suspended for three days and demoted from sergeant to patrolman for violating police department policy. The

officer appealed to the borough's civil service commission, which considered the borough's charges that the officer failed to notify the police dispatcher before leaving the borough limits; failed to inform the police dispatcher that he was transporting the boys; failed to obtain an incident number from the police dispatcher; and failed to file an official report with respect to transporting the boys. The borough asserted that these actions constituted neglect or violation of official duties, inefficiency, disobedience of orders and conduct unbecoming an officer.[10] The commission concluded that the officer had violated his official duties, but it rejected the charges of inefficiency, neglect, disobedience of orders, and conduct unbecoming an officer as not substantiated. As such, it upheld the three-day suspension, but reversed the demotion. The borough appealed to the trial court, which affirmed the commission. Before this Court, the borough argued that the commission exceeded its authority by modifying the penalty. We rejected this argument because the borough proved only the least serious charge. *Borough of Bristol,* 409 A.2d at 49.

In *Herrmann,* the Court next considered the precedent in *Zimmett,* 367 A.2d 382, where the serious charge of drinking on the job was sustained while the other less serious charges were dismissed. This was in contrast to *Borough of Bristol*, where the officer, who was trying to be a good samaritan, was cleared of the serious charges. Only the least serious charge was sustained. This Court concluded that the facts in *Herrmann* "fell into the gray area" between *Borough of Bristol* and *Zimmett.*

We reconciled the precedent as follows:

---

[10] *Cf.* CODE OF BOROUGH OF LANSDALE, §7-7.A.

23

> The rule of law to be discerned from an analysis of *Borough of Bristol* and *Zimmett* is that the commission must review the charges *de novo* and determine whether the penalty imposed by borough officials is commensurate with the charges sustained by the evidence. Where the charges brought by the borough are found by the commission to be supported by the evidence, the penalty imposed is not otherwise prohibited, and the selection of the penalty is not arbitrary, discriminatory or an abuse of discretion, the commission may not modify the council's penalty. *Where the charges brought are not fully substantiated, however, and/or the penalty imposed by the council is severely disproportionate to any charges which are sustained, the penalty constitutes an abuse of the council's discretion and the commission has authority to modify it.*

*Herrmann*, 478 A.2d at 963 (internal footnote omitted) (emphasis added). Accordingly, we held that the borough's penalty of indefinite suspension "must be considered excessively disproportionate as punishment for the single charge sustained" out of the many charges that were reversed. *Id.* Further, the borough's indefinite suspension was vague and specified no conditions which the officer could satisfy to end it. We reversed the trial court and reinstated the four-and-a-half-month suspension imposed by the commission.

The case *sub judice* is closer to *Borough of Bristol* and *Herrmann* than to *Zimmett*. As in *Borough of Bristol* and *Herrmann*, the Borough's more serious charges against Johnson have been found not to be substantiated by substantial evidence. The only charge supported by the evidence is Charge 1, failure to appear at the preliminary hearing. This Court has instructed that "[w]here the charges brought are not fully substantiated … and/or the penalty imposed by the council is severely disproportionate to any charges which are sustained, the penalty constitutes an abuse of the council's discretion and the commission has authority to modify it." *Herrmann*, 478 A.2d at 963. Here, the question is whether Johnson's removal is

24

disproportionate to the single sustained charge of not attending a preliminary hearing.

*Borough of Bristol*, *Herrmann* and *Zimmett* involve modification of discipline by a civil service commission. Modification by the trial court is authorized by Section 754(b) of the Local Agency Law, which states, in relevant part, as follows:

> the court shall affirm the adjudication unless it shall find that the adjudication is in violation of the constitutional rights of the appellant, or is not in accordance with law, or that the provisions of Subchapter B of Chapter 5 (relating to practice and procedure of local agencies) have been violated in the proceedings before the agency, or that any finding of fact made by the agency and necessary to support its adjudication is not supported by substantial evidence. *If the adjudication is not affirmed, the court may enter any order authorized by 42 Pa.C.S. §706* (relating to disposition of appeals).

2 Pa. C.S. §754(b) (emphasis added). Section 706 of the Judicial Code authorizes the entry of different orders. It states:

> An appellate court may affirm, *modify*, vacate, set aside or reverse any order brought before it for review, and may remand the matter and direct the entry of such appropriate order, or require such further proceedings to be had as may be just under the circumstances.

42 Pa. C.S. §706 (emphasis added). *See also Kish v. Annville-Cleona School District*, 645 A.2d 361, 363 (Pa. Cmwlth. 1994) (a "trial court [is] empowered to enter an order modifying the adjudication" of a local agency where key findings of fact are not supported by substantial evidence).

Here, the trial court followed the reasoning set forth in *Herrmann* and exercised its authority under Section 706 of the Judicial Code. As noted by the trial

court, Johnson would not have been removed from his position simply because of his failure to attend a hearing. Chief McDyre testified as follows:

> Q. Chief, let me ask you this question. If … you had not concluded that [Johnson] was not being truthful with you, and it was just a missed hearing, … I take it you would not have recommended termination?
>
> A. Absolutely not.
>
> Q. I'm sorry?
>
> A. I would not recommend termination.

N.T., 7/19/2010, at 140; R.R. 142a. Accordingly, the trial court modified the penalty to a 30-day suspension without pay.

The Borough argues that the trial court's reasoning is flawed because the Borough, not Chief McDyre, had the ultimate authority on a penalty. This is true but irrelevant. Under *Herrmann*, once it is held that not all of the charges are substantiated, it must be determined whether the penalty is proportionate to the remaining charge or charges. If not, the penalty constitutes an abuse of discretion by the municipality and may be modified by the trial court sitting in an appellate capacity.

As Chief McDyre explained, Johnson's missing the hearing for a memory lapse was not critical:

> We move on, we are in the healing stage, we make a way he's not going to forget about a hearing. He's going to make a family calendar. Everything is going good.

N.T., 7/19/2010, at 136; R.R. 138a. Further, Johnson's prior disciplinary record for missing hearings demonstrates that discharge would be a disproportionate discipline for that single act. On June 25, 2009, Johnson failed to appear at two preliminary

26

hearings. Because the 2009 event was deemed "the third court hearing [he] missed [he was] issued a written reprimand." R.R. 658a.[11] The written reprimand stated that "[f]urther violations of this type will result in appropriate and progressive discipline." *Id.* "Progressive discipline" suggests something short of discharge, such as suspension. Otherwise, the reprimand would have stated, specifically, that the next time Johnson missed a hearing, he would be dismissed. Here, the trial court ordered suspension, which is "progressive" discipline.

The Borough's Civil Service Ordinance provides that where "charges are dismissed, the record shall be sealed and not be available for public inspection." CODE OF THE BOROUGH OF LANSDALE, §7-7(D)(2); R.R. 616a. It also provides that where the Commission "finds that sufficient evidence has been introduced to support the charge, the Commission shall not modify the penalty imposed … unless it finds that the penalty imposed was arbitrary, discriminatory or an abuse of the Borough Council's or Mayor's discretion." *Id.* at §7-7(D)(3); R.R. 616a. The Borough's Civil Service Ordinance does not address the situation where some charges are found supported by substantial evidence, but others are not. However, even where charges are sustained, the Commission can modify a penalty for abuse of discretion. Implicitly, therefore, the Civil Service Ordinance authorizes a modification where the Borough's most serious charges are dismissed.

We conclude that a removal of Johnson on the single sustained charge would have constituted a disproportionate penalty. Accordingly, the trial court acted within its authority under Section 754(b) of the Local Agency Law and Section 706

---

[11] Johnson missed three hearings on July 21, 1998; one hearing in April 2006; and two hearings on June 25, 2009. R.R. 610a. Including the 2009 event, he missed a total of six hearings. However, his reprimand was based on the number of hearing days missed, *i.e*, three, and not the total number of hearings missed over the course of those three days.

of the Judicial Code in its modification of the Commission's order that Johnson be dismissed.

## Conclusion

For all the above reasons, the trial court did not err in concluding that substantial evidence of record did not support Charges 3 and 4, and the trial court acted within its authority under the Local Agency Law and the Judicial Code by modifying the discipline from a removal to a 30-day suspension.  Thus, we affirm the order of the trial court.

_____
MARY HANNAH LEAVITT, President Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

George Johnson              :
                            :
         v.                 :    No. 134 C.D. 2013
                            :
Lansdale Borough and Lansdale :
Borough Civil Service Commission, :
         Appellants         :

# **O R D E R**

AND NOW, this 1st day of March, 2018, the order of the Court of Common Pleas of Montgomery County, dated January 3, 2013, in the above-captioned matter is AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge

George Johnson                     :

                                    :

         v.                   :

                                      :

Lansdale Borough and Lansdale    :
Borough Civil Service Commission,  :  No. 134 C.D. 2013
                  Appellants   :  Submitted: December 16, 2016


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
                HONORABLE ANNE E. COVEY, Judge
                HONORABLE DAN PELLEGRINI, Senior Judge


DISSENTING OPINION
BY JUDGE COVEY                         FILED: March 1, 2018


        I respectfully dissent from the Majority's decision affirming the trial court's modification of the Lansdale Borough (Borough) Civil Service Commission's (Commission) termination of George Johnson's (Johnson) employment. In the Supreme Court's remand of the instant case to this Court, it explained a court's deferential standard of review which "**will both permit local agencies to manage their employees without fear that a trial court may 'second-guess' their every prerogative and will breathe vitality into civil service commissions**, which otherwise would appear to constitute nothing more than an unnecessary stop between a local agency decision and trial court review." *Johnson v. Lansdale Borough*, 146 A.3d 696, 711, 713 (Pa. 2016) (*Johnson II*) (emphasis added). Notwithstanding this clear mandate, the Majority herein upholds the trial court's "second-guess[ing]" of the Commission's decision. *Id*. Based upon the Supreme Court's unequivocal direction, I would reverse the trial court because without taking any additional evidence, the trial court disregarded the Commission's factual findings concerning

the underlying conduct, improperly dismissed two of the charges and, based upon its conclusion that only one charge had been proven, modified the Commission's penalty.

Because the parties herein presented no new evidence before the trial court, the trial court was required to affirm the Commission's adjudication absent "a constitutional violation, an error of law, a failure by the [Commission] to comply with the statute's procedural provisions, or a material finding of fact that is unsupported by substantial evidence." *Johnson II*, 146 A.3d at 711. The *Johnson II* Court also clarified that upon judicial review of the Commission's decision, a court must give weight and credence to local civil service determinations.

In the instant case, the subject disciplinary action was based on four charges of alleged misconduct: Charge 1 – Johnson failed to appear at a preliminary hearing; Charge 2 - Johnson failed to fully and honestly respond to an investigation into his failure to appear, which included a meeting at which Johnson was questioned by Borough Police Chief, Robert McDyre (Chief McDyre); Charge 3 - Johnson made false statements to a District Justice regarding his failure to appear at the preliminary hearing; and, Charge 4 – Johnson prepared a document to the Montgomery County District Attorney's (District Attorney) office containing false information pertaining to his failure to appear at the preliminary hearing.

The Commission concluded that the Borough had failed to provide substantial evidence to prove Charge 2, but had proven Charges 1, 3 and 4. Specifically, the Commission found:

> [Johnson] did not disclose to either [District Justice Borek (District Justice)] or the District Attorney's office that ***the reason he missed the hearing was that he forgot***. . . . [Johnson] did not disclose to either [the District Justice] or the District Attorney's office the two supposed explanations as to why [sic] reasons he 'forgot'. . . . Rather, because he omitted the undisputed fact that he forgot, the message that

AEC - 2

was conveyed to [the District Justice] and the District Attorney's office was that he was physically not able to attend because he was sick.

Reproduced Record (R.R.) at 765a (bold and italic emphasis added). Thus, the Commission found as fact that the reason Johnson missed the preliminary hearing was because he forgot about it. The Commission also stated: "[Johnson's] behavior demonstrated a repetitive pattern of missed hearings. His behavior showed dishonesty with the [Lansdale District] Court [(District Court)] and the [] District Attorney's office." R.R. at 773a.

The trial court, however, found:

The Commission's ruling regarding Charge [ ] 3 that Johnson made false statements to the local District Justice was not supported by substantial evidence. Indeed, the only statement Johnson provided to the [District C]ourt for the missed hearing was based on the undisputed fact of Johnson's sickness. Further, not only did Charge [ ] 3 fail to include language citing Johnson for not providing all of the reasons for missing the [District C]ourt hearing, but the omitted reasons were also not disputed. **Essentially, since the only statement made to [the District Justice] was truthful, albeit not the complete or full rationale,** there is insufficient evidence that a reasonable mind might accept as adequate to support the Commission's conclusion.

Trial Ct. Op. at 5 (emphasis added). Thus, the trial court completely disregarded the Commission's express finding as to the reason for Johnson missing the hearing which, as will be explained below, was supported by more than sufficient evidence.

The trial court also found for similarly-stated reasons that the Commission erred in sustaining Charge 4. Further, the trial court concluded that since the Commission had dismissed Charge 2, it was inconsistent for the Commission to find Johnson had been untruthful under Charges 3 and 4 and sustain those charges. Accordingly, the trial court modified the Commission's penalty. However, this Court in *Hodgins v. Civil Service Commission, Borough of*

AEC - 3

*Wilkinsburg*, 426 A.2d 1229 (Pa. Cmwlth. 1981), held that Section 1191 of the former Borough Code[1] empowered a trial court to modify a commission's penalty "**only** if the [trial c]ourt in doing so does not itself commit an abuse of discretion." *Hodgins,* 426 A.2d at 1232 (emphasis added).[2]

Here, the trial court disregarded the substantial evidence that supported the Commission's findings and made its own findings of fact when it found that "the only statement made to [the District Justice] was truthful, albeit not the complete or full rationale[,]" and that there were multiple reasons Johnson missed the preliminary hearing.[3]  Trial Ct. Op. at 5.  The undisputed record evidence reveals that Johnson

---

[1] Act of February 1, 1966, P.L. (1965) 1656, *formerly* 53 P.S. § 46191.

> Section 1191 of the former Borough Code, along with the other provisions of the Borough Code, was repealed by Section 3(2) of the Act of April 18, 2014, P.L. 432, effective June 17, 2014.  The provisions of the new Borough Code are now found in Title 8 of the Pennsylvania Consolidated Statutes, 8 Pa.C.S. §§ 101–3501.

*Ray v. Civil Serv. Comm'n of Borough of Darby*, 131 A.3d 1012, 1018 n.2 (Pa. Cmwlth. 2016).

[2] 
> [T]his Court has held that under the Borough Code, a borough council has primary responsibility and discretion for determining whether and how a police officer should be disciplined, and both the trial court and the civil service commission should give due respect and weight to the actions of this duly constituted municipal body.  Further, under Section 1191 of the Borough Code, [formerly] 53 P.S. § 46191, a borough civil service commission has no authority to modify the penalties imposed by borough officials for violations of the [Borough] Code where the commission finds that the charges against the officer are supported by the evidence and the penalties imposed are not otherwise prohibited.

*Borough of Edgeworth v. Blosser*, 672 A.2d 854, 856 (Pa. Cmwlth. 1996).

[3] The Majority contends that the dissent to this Court's opinion in *Johnson v. Lansdale Borough*, 105 A.3d 807 (Pa. Cmwlth. 2014) (*Johnson I*), incorrectly claimed that the trial court made its own findings of fact.  The Majority states: "In its opinion and order, the trial court did not make any findings of fact but, rather, reviewed the Borough Commission's findings of fact against a substantial evidence challenge."  Majority Op. at 13 n.7.  Although the trial court's opinion did not set forth a list of specific factual findings, the trial court's representation that "the only statement made to [the District Justice] was truthful," is a **factual finding** that was **not made by the**

AEC - 4

admitted at the May 26, 2010 meeting, the *Loudermill*[4] hearing and the Commission hearings that he missed the preliminary hearing **because he forgot**. Although Johnson also explained that he was sick, **he admitted that he would have attended the preliminary hearing if he had remembered.** Johnson testified that he "had several issues going on in [his] life that were personal to [him]" and his sickness "was something that was weighing down on [his] mind which was drawing [his] attention away from [his] work." R.R. at 358a. He further explained, **"had I remembered** absent these other things . . . **I would have attended whether I was sick or not."** *Id.* (Emphasis added). Notably, the Commission found that "a direct causal relationship between [Johnson] being 'sick' [a sinus infection] and him forgetting the hearing was never established." R.R. at 762a-763a n.2. **The Commission expressly found based on Johnson's own testimony that his reason for missing the hearing was that he forgot about it.** Based on this evidence, which included Johnson's own testimony, the trial court clearly erred in substituting its judgment and making findings then replacing its findings for those made by the Commission.

Contrary to the Commission's well-supported factual finding that Johnson's statement to the District Justice was **un**truthful, the trial court found otherwise. Critically, Johnson's falsity was not his statement regarding his physical condition, *but that his physical condition was his reason for missing the preliminary hearing.* Johnson did not merely tell the District Justice that he was sick, for if he had, it is possible that he would not have communicated a falsehood. Instead,

---

**Commission**, but rather by the trial court. R.R. at 835a. *See, e.g., In re Culbertson's Estate*, 152 A. 540 (Pa. 1930). Further, the trial court's conclusion that Johnson's sickness was only one of the reasons that he missed the hearing is contrary to the Commission's finding that "that **the** reason [Johnson] missed the hearing was that he forgot." R.R. at 765a (emphasis added). **The Commission did not find** that there were **multiple reasons** why Johnson missed the hearing. Thus, here, as in the dissent in *Johnson I*, this Dissent maintains that the trial court **did** impermissibly act as fact finder.

[4] *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985).

AEC - 5

Johnson told the District Justice that he missed the hearing **because** he was sick, rather than the real reason (as factually determined by the Commission) – that he forgot about the hearing.[5]

"False" is defined as "adjusted or made so as to deceive," and "intended or tending to mislead." *Merriam-Webster's Collegiate Dictionary* 451 (11th ed. 2004). Johnson testified at the Commission hearing that his illness did not prevent him from attending the preliminary hearing. He stated, "I was sick. **But I would have attended the hearing had I recalled I had the hearing.**" R.R. at 410a-411a (emphasis added). The record evidence supports the Commission's conclusion that Johnson forgot about the hearing and his alleged illness is not the reason that Johnson missed the preliminary hearing. Thus, Johnson's communication to the District Justice and the statement in his letter to the District Attorney's office were falsehoods, intended to mislead the District Justice and the District Attorney's office that he had a legitimate reason for his absence - sickness.

In addition, the record does not support the trial court vacating and reversing the Commission's findings and conclusions regarding Charges 3 and 4 on the grounds they were inconsistent with the Commission's conclusion relative to Charge 2. Contrary to the trial court's statement relative to Charge 2, the Commission **did not** "determine[] . . . that Johnson's multiple explanations did not constitute deliberate lies." Trial Ct. Op. at 5. Rather, the Commission found that the Borough **had "not presented sufficient clear and convincing evidence** to

---

[5] Similarly, Johnson's letter to the District Attorney's office reads in pertinent part: "I did not attend the Preliminary Hearing *because* [I] was home sick." R.R. at 657a (emphasis added).

The Majority focuses on only part of Johnson's representations - that he was sick. By doing so, it creates an artificial construct that he was honest in his statements regarding his health. The veracity of Johnson's statement about his health was not the reason for his discharge. Instead, the Borough terminated his employment **for *lying about his reason for missing the hearing***. The Commission correctly elaborated: "[Johnson's] health on that date was never really a central issue. This was particularly true after [Johnson] testified that being sick in and of itself would not have prevented him from attending the May 18, 2010 hearing." R.R. at 762a n.2.

substantiate [Charge 2]." R.R. at 764a (emphasis added). The Commission explained that, given the minor inconsistencies in the Borough's witnesses' testimony and the lack of a contemporaneous record, it was not sufficiently clear to the Commission that the multiple excuses Johnson communicated to Chief McDyre constituted deliberate lies.

The Majority repeats the trial court's mischaracterization of the Commission's findings in this respect and construes the evidence to create ambiguity where none exists. **The Commission's decision clearly explains that the Commission found that the Borough *had not provided sufficient evidence* to substantiate Charge 2.** Contrary to the trial court's representation, the Commission in no manner made an affirmative determination that "Johnson's multiple explanations did not constitute deliberate lies." Trial Ct. Op. at 6 n.8. Echoing the trial court's characterization of the Commission's decision, the Majority states: "The Commission itself ruled that Johnson's multiple explanations did not constitute 'deliberate lies' for purposes of the Borough's Charge 2[.]" Majority Op. at 19. **These characterizations are unsupported and do not in any regard reflect the Commission's findings.** Further, such characterizations were **expressly discounted** by the Pennsylvania Supreme Court in its opinion remanding this case, wherein, it stated:

> The [trial] court reached this conclusion without acknowledging that the Commission's finding of insufficient evidence supporting the second charge appeared to be based upon the Borough's failure to create a record of the May 26, 2010 internal investigation meeting, rather than any credibility determination regarding Officer Johnson's explanations for failing to appear at the preliminary hearing.

*Johnson II*, 146 A.3d at 702 n.6.

Notwithstanding, the Majority perpetuates the trial court's mischaracterization, provides an "incomplete" description of the Commission's

findings and paints an inaccurate picture of the Commission's determination. Majority Op. at 20. Both the Majority and the trial court minimize Johnson's misconduct and displace the Commission's proper approval of the Department's disciplinary action.

Further, the facts underlying Charge 2 and those supporting Charges 3 and 4 were completely different and pertained to **separate factual representations** Johnson made to the District Justice and in the letter he prepared for the District Attorney's office. In contrast to the multiple explanations Johnson gave at the May 26, 2010 meeting with the Borough, Johnson gave only one excuse to the District Justice and in his letter to the District Attorney's office – that he had missed the hearing "**because he was home sick**."[6] R.R. at 657a (emphasis added). That representation was false. Accordingly, the Commission's rulings on Charges 3 and 4 were supported by substantial evidence and were not inconsistent with the Commission's findings on Charge 2. Consequently, the trial court erred when it ignored the Commission's findings based on the record evidence, and substituted its determination for that of the Commission.

The Majority also concludes that Charge 4 – regarding the draft letter to the District Attorney – could not be sustained because "[a] 'statement[]' . . . must be conveyed[[,]"[7] and the draft letter was never sent. Majority Op. at 20. Importantly,

---

[6] Johnson testified that he told Chief McDyre "that [he] had already met with [the District Justice] and explained to him that [he] was sick is the reason that [he] had told him for missing court on that date." R.R. at 285a.

[7] The Majority provides no legal authority for this statement. Although it is true that "in order for defamation to occur in the form of either libel or slander, the defamatory statement must be published or communicated to a third person." Defamation is not at issue herein. *Elia v. Erie Ins. Exch.*, 634 A.2d 657, 660 (Pa. Super. 1993). Further, the fact that a "defamatory statement must be . . . communicated" demonstrates that statements, although not defamatory, are indeed statements even when they are not communicated. *Id*.

Further, even if such "convey[ance]" or communication was necessary, Johnson's statement was "conveyed[,]" although not to the District Attorney. Majority Op. at 20. The statement was "conveyed" to Chief McDyre when he reviewed the letter. *Id*.

Charge 4 was **not** that Johnson made a false statement to the District Attorney. Instead, Charge 4 was that Johnson "**prepared** a document to the District Attorney's office in which [he] falsely stated the reason [he] had missed a preliminary hearing and [he] requested 're-arrest' permission based on the false statement." R.R. at 757a (emphasis added).[8] There is absolutely no basis for this Court to conclude that the charge had not been proven by substantial evidence. Thus, the trial court abused its discretion by disregarding the Commission's findings of fact that were supported by substantial evidence and usurping the Commission's duty by making its own findings when it took no new evidence.

In sum, the trial court improperly re-weighed the evidence, substituted its judgment for that of the Commission and, without taking any additional evidence, made factual findings that were unsupported by substantial record evidence.[9] Our Supreme Court has specifically recognized the importance of deferring to local agencies' independent authority over employment decisions, and encouraging and promoting "the vitality" of civil service commissions by avoiding the very same type of second-guessing that has occurred herein. *Johnson II*, 146 A.3d at 713.

---

[8] The Majority is correct that since the letter was never sent to the District Attorney's office, the Commission erred in its factual finding when it stated that the information was conveyed to the District Attorney's office: "[B]ecause [Johnson] omitted the undisputed fact that he forgot, the message that was conveyed to [the District Justice] and the District Attorney's office was that he was physically not able to attend because he was sick. This was stated in [Johnson's] own words." Finding of Fact No. 29; R.R. at 765a. Notwithstanding, such was harmless error because Charge 4 expressly pertained to **preparing**, rather than **sending** the letter with false statements.

[9] The trial court further stated that "[t]here was . . . not substantial evidence to support an expansive reading of Charge [ ] 3 [and Charge 4] to encompass any omitted statements." Trial Ct. Op. at 5-6. The trial court reasoned that since Johnson's statement about being sick was "truthful, albeit not the complete or full rationale," the Commission imposed an unwarranted obligation on Johnson to provide the District Justice and the District Attorney's office with "full and complete" reasons for his absence. *Id*. Such is not the case. The Commission determined, based on Johnson's admission, that Johnson stated that he did not appear at the hearing ***because*** **he was sick,** which information was "false" – "tending to mislead." *Merriam-Webster's Collegiate Dictionary* at 451.

AEC - 9

I would therefore hold that the trial court erred by modifying the Commission's determination which is supported by substantial record evidence.


_____
ANNE E. COVEY, Judge